THIGPEN, Judge.
This case involves the termination of parental rights.
In March 1991, the Madison County Department of Human Resources (DHR) filed petitions for the termination of the parental rights of J.E.R. and N.R. (parents) in and to their minor children, A.R., J.R., and J.E.R., Jr. DHR alleged, inter alia, that the parents were unable or unwilling to discharge their parental responsibilities, and that their conduct or condition was such as to render them unable to properly care for the children. DHR also alleged that the parents failed to provide for the children’s material needs and that the parents exhibited a lack of effort in adjusting their circumstances to meet the needs of the children.
Following ore tenus proceedings, the trial court entered orders terminating the parental rights of the parents in each of the children, stating, in pertinent part, the following:
“[T]he Court finds from clear and convincing evidence, competent, material and relevant in nature, that said [children are] dependent [children] and that each of the parents of the [children are] unable or unwilling to discharge their responsibilities to and for the child[ren], and/or the conduct or condition of each of the parents is such as to render each of them unable to properly care for the child[ren], and that such conduct or condition is unlikely to change in the foreseeable future; ...”
Both parents appealed, raising two issues for review: 1) Whether DHR made reasonable efforts, pursuant to Ala. Code 1975, § 26-18-7(a)(6), leading toward the rehabilitation of the parents; and 2) whether the trial court abused its discretion in terminating the parental rights.
Initially we note that parents have a prima facie right to the custody of their children which may be overcome only by clear and convincing evidence that the children’s best interests would be served by permanent removal from the custody of the parents. East v. Meadows, 529 So.2d 1010 (Ala.Civ.App.1988). The decision of the trial court following the presentation of ore tenus evidence is presumed correct and will not be disturbed on appeal unless it is unsupported by the evidence and is plainly and palpably wrong. Muffoletto v. State Dep’t of Human Resources, 537 So.2d 939 (Ala.Civ.App.1988). The trial court is given the authority to terminate parental rights if it finds, from clear and convincing evidence, that the parents are unable or un *163 willing to discharge their responsibilities toward their children, or if the trial court finds that the conduct or condition of the parents is such as to render them unable to properly care for the children and that such conduct or condition is unlikely to change in the foreseeable future. Ala.Code 1975, § 26-18-7.
Where the State is seeking to terminate parental rights, there first must be a determination from clear and convincing evidence that the children are dependent. D.S., R.L.M., and M.F.B. v. State Dep’t of Human Resources, 586 So.2d 942 (Ala.Civ.App.1991). Then, the trial court must find that there exists no viable alternative to termination. D.S., R.L.M., and M.F.B., supra.
The parents first contend that the trial court’s decision should be reversed because DHR failed to work with the parents towards rehabilitation. That argument is without merit. The trial court expressly found that the conduct or condition of the parents was such as to render them unable to properly care for their children, and that such conduct or condition was unlikely to change in the foreseeable future. Accordingly, § 26-18-7(a)(6) is inapplicable. In re Hutchins, 474 So.2d 1152 (Ala.Civ.App.1985).
The parents next argue that DHR failed to present and that the trial court failed to consider evidence regarding less drastic alternatives. The record revealed that DHR had been involved with the family since 1987. Dr. Lori Kaufman, a family practitioner, testified that the children had each, on occasion, been diagnosed with failure to thrive and that the children seemed to be in a very unkempt condition whenever they were brought in for treatment. She testified to multiple suspicious injuries suffered by the children. She also testified that the children seemed to thrive away from the care of the parents, but they seemed to suffer whenever returned to the care of the parents. She testified to noticing that the parents’ attitude was one of scolding rather than consolation whenever the children seemed frightened.
Ken Hendrix, a licensed professional counsellor, performed tests of both parents revealing that the mother’s reading level was measured at the beginning sixth grade level, and that the father could not read. Intelligence testing revealed that the mother was in the borderline mentally-retarded range, while the father tested in the mild mentally-retarded range. Other tests measured common sense and analytical ability. Hendrix expressed concerns regarding the parents’ ability to parent the children, regardless of any possible, intense oversight and follow-up by DHR.
The parents testified regarding their income, expense, assistance, employment, and arrest history. Several DHR workers testified that numerous services had been provided to the parents, and one caseworker testified that the parents once had the simultaneous services of two caseworkers. There was evidence from DHR that the parents did not pay the recommended child support while the children were in foster care, and that the parents failed to keep many of the DHR appointments.
Kathy Davis, a DHR caseworker, testified regarding alternative placement with relatives. There was testimony regarding the mother’s half-brother and sister-in-law, both of whom have health problems and do not work. They were determined unsuitable for alternative placement.
Based on the foregoing, the decision of the trial court to terminate the parents’ parental rights is supported by the evidence. Accordingly, this case is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and RUSSELL, J., concur.