This is a termination of parental rights case.
In December 1991, the Baldwin County Department of Human Resources (DHR) filed a petition alleging that C.A.O., then age seven months, was a dependent child. Following a hearing in January 1992, the trial court found that the physical well being of the infant necessitated that she remain in foster care pending her surgery and recuperation. Custody was awarded to DHR.
Following a review hearing in June 1992, DHR filed a petition seeking permanent custody of C.A.O. and requesting the termination of parental rights of B.O. (mother) and the biological father. Following an ore tenus proceeding in November 1992, the trial court terminated the parental rights of both parents and it granted permanent custody of the child to DHR.
Only the mother appeals. Her single issue is whether there was clear and convincing evidence to terminate her parental rights.
The trial court's order made the following findings, viz:
 "The Court having proceeded to hear sworn testimony, ore tenus, proceeds to make the following findings of facts and *Page 806 
conclusions of law as established by clear and convincing evidence:
". . . .
 "2. The Court finds that both natural parents have abandoned the subject minor, as defined by Ala. Code § 26-18-7 (1975). The Court finds as to both parents that each have met the condemning criteria set forth in Ala. Code § 26-18-7(b)(1), (2), (3), and (4) (1975).
 "3. The Court finds that both the natural parents have failed to provide financial or emotional support for the minor child or to perform their parental duties associated with the child. The Court finds that both parties were financially able to provide for, at least, the financial needs of the child. The parents have failed to exercise responsible visitation with the minor child. The Court finds that the natural parents have been unable to care for the emotional needs of the child. The Court finds that the subject minor requires detailed and delicate care. The Court finds that the Department has made responsible efforts to reunite the family with the minor child, but that said efforts have failed and have proved futile. The Court finds that the natural mother has chosen [the father] over the needs of the minor child.
 "4. The Court finds that no relatives are suitable or willing to parent the subject minor. . . ."
A parent's prima facie right to the custody of its children may be overcome only by clear and convincing evidence that the child's best interests would be served by permanent removal from the custody of the parents. East v. Meadows,529 So.2d 1010 (Ala.Civ.App. 1988). Nevertheless, the trial court is given the authority to terminate parental rights if it finds, from clear and convincing evidence, that the parents are unable or unwilling to discharge their responsibilities toward their children, or if the trial court finds that the conduct or condition of the parents is such as to render them unable to properly care for the children, and that such conduct or condition is unlikely to change in the foreseeable future. Ala. Code 1975, § 26-18-7; N.R. v. State Dept. of Human Resources,606 So.2d 161 (Ala.Civ.App. 1992). Where, as here, the State seeks to terminate parental rights, there first must be a determination from clear and convincing evidence that the child is dependent. D.S., R.L.M., and M.F.B. v. State Dept. of HumanResources, 586 So.2d 942 (Ala.Civ.App. 1991). Then, the trial court must find that there exists no viable alternative to termination. D.S., R.L.M., and M.F.B., supra.
The record discloses that DHR has been involved with the mother since 1988, and that two older children have been removed from the mother's care, with custody being awarded to their father because of the mother's neglect and the children's failure to thrive.
There is testimony in the record that University of South Alabama (U.S.A.) Medical Center doctors requested DHR to monitor C.A.O.'s care upon her release from the hospital where she had been treated for an upper respiratory infection and congestive heart failure. In early December 1991, when DHR discovered the mother and the child living in a trailer without adequate heat, they suggested that the mother place the child in foster care in order to avoid further upper respiratory infections. Upon her failure to cooperate, DHR filed a petition alleging the child to be dependent and requesting a pickup order. When DHR took temporary custody of the child, she was again determined to require hospitalization due to a "massive heart condition" and she was diagnosed as "failure to thrive."
The child's heart condition required surgery to close three holes in her heart. A DHR caseworker requested that the mother remain with the child during her hospitalization. The evidence indicated that the mother visited the child for about thirty minutes during one hospitalization and spent one night with the child during another. During a subsequent hospitalization, the mother failed to visit, and it was necessary for DHR to hire a sitter to provide the appropriate care. After DHR assumed custody of the child, the mother moved in with the putative father, where she indicated that she was subjected to physical abuse and trauma, resulting in calls for protection from law enforcement. *Page 807 
A psychiatric examination of the mother revealed that she suffers major depression recurrence from a personality disorder, and mild mental retardation. Both DHR and Mental Health attempted to rehabilitate the mother toward independent living and reunification with the child by scheduling resources for the mother, including parenting classes, mental health counseling, and an educational program. The mother failed to adequately participate in these programs. During cross examination, she admitted that she had not participated in the programs planned for her, nor was she taking her medication properly.
Because the mother was living with the putative father, he was asked to participate in mental health counseling, marriage counseling, parenting classes and the like, but he refused to do so. He was also requested to provide child support from his earnings, but failed to do so. Relative resources were sought; however, due to the family's involvement with law enforcement and other incidences of sexual abuse and alcohol abuse, the resources were considered too violent and inappropriate.
The decision of a trial court following the presentation of ore tenus evidence is presumed correct and will not be disturbed on appeal unless it is unsupported by the evidence and is plainly and palpably wrong. Muffoletto v. State Dept. ofHuman Resources, 537 So.2d 939 (Ala.Civ.App. 1988).
Based upon the foregoing, the decision of the trial court to terminate the mother's parental rights is supported by the evidence. Accordingly, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, J., concur.