THIGPEN, Judge.
This case involves a custody determination following a finding of dependency and the trial court’s refusal to terminate the parental rights of the father.
In August 1994, A.R. and B.R., the maternal grandparents of B.L.R., who was born in November 1993, petitioned for custody of the child. B.L.R.’s mother died in May 1994. The petitioners alleged that M.M., the father — who was not married to the mother— has had little or no contact with the child, and has contributed nothing to the child’s support or maintenance.
In February 1995, the grandparents amended their petition, contending that the father had abandoned the child and seeking to terminate his parental rights. The father filed a petition seeking custody of the child. Following ore tenus proceedings, the trial court denied the request to terminate the parental rights of the father and granted legal custody of the child to the Department of Human Resources (DHR), while the ma *983 ternal grandmother retained physical custody. The grandmother appeals, contending that the trial court erred in not terminating the parental rights of the father, and in granting custody of the child to DHR.
Ala.Code 1975, § 26-18-7, states, in part:
“(a) If the court finds from clear and convincing evidence, competent, material and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents. In determining whether or not the parents are unable or unwilling to discharge their responsibilities to and for the child, the court shall consider, ... but not be limited to, the following:
“(1) That the parents have abandoned the child, as herein defined;
[[Image here]]
“(b) Where a child is not in the physical custody of its parent or parents appointed by the court, in addition to the foregoing, [the court] shall also consider, but is not limited to the following:
“(1) Failure by the parents to provide for the material needs of the child or to pay a reasonable portion of its support, where the parent is able to do so.
“(2) Failure by the parents to maintain regular visits with the child in accordance with a plan devised by the department, or any public or licensed private child care agency, and agreed to by the parent.
“(3) Failure by the parents to maintain consistent contact or communication with the child.
[[Image here]]
“(c) In any case where the parents have abandoned a child as herein defined and such abandonment continues for a period of six months next preceding the filing of the petition, such facts shall constitute a rebuttable presumption that the parents are unable or unwilling to act as parents.”
A trial court’s judgment that follows ore tenus proceedings is presumed correct absent palpable error. B.R.M. v. State Department of Human Resources, 626 So.2d 646 (Ala.Civ.App.1993). .The termination of one’s parental rights is a drastic measure, and when a non parent is the petitioner, the trial court must apply a two-pronged test. From clear and convincing evidence, the trial court must first determine that the child is dependent, and then, it must determine that there are no viable alternatives to the termination of parental rights. Ex parte Beasley, 564 So.2d 950 (Ala.1990); see also B.O. v. Department of Human Resources, 628 So.2d 805 (Ala.Civ.App.1993). A natural parent’s prima facie right to the custody of his child can be removed only if it is proven that the permanent removal of that custody would serve the child’s best interests. L.N. v. State Department of Human Resources, 619 So.2d 928 (Ala.Civ.App.1993). In determining the child’s best interests, the trial court must consider the physical, financial, and mental ability of the parent to care for the child. J.L.B. v. State Department of Human Resources, 608 So.2d 1367 (Ala.Civ.App.1992).
The father testified that he was employed and that he was financially able to care for the child. Although he was previously ordered to pay child support, the father admitted that he had never paid any support. He testified, however, that he had provided for the needs of the child before the mother’s death. Furthermore, although the father had been awarded visitation rights, he has not had regular contact with the child since the mother’s death. He testified that he had attempted to maintain regular contact with the child, but that the grandmother would not allow it, and he denied attempting to enforce his visitation rights. The father did not favor this court with a brief.
The grandmother denied depriving the father of visitation with the child and further denied that he had attempted to contact or visit the child. She also denied that she had done anything to prevent the father from seeing the child.
Donna Bowman, a social worker, performed home evaluations and reports regard *984 ing the father, the maternal grandmother, and the maternal grandfather. Her evaluations revealed that the father was unemployed, that living in the home with him were his mother, his stepfather, his grandmother, and his brother, and that much of the information provided by him was contradictory. Bowman testified that the father admitted to not paying any child support, but that he had indicated an interest in obtaining custody of the child so that he could be a father to her. Bowman further testified that the homes of the maternal grandfather, the maternal grandmother, and the father would all be adequate and suitable homes for the child. She recommended that the minor child remain in the custody of the grandmother, and that the father pay child support and be granted regular visitation with the child, with the option of petitioning for custody at a later date, should he establish a relationship with the child and develop some stability in his life.
The father’s former high school coach testified regarding the father’s reputation for dishonesty. A cousin of the mother testified that the father had told her that he did not want custody, but that he only wanted to exercise his visitation rights. The mother’s sister testified that she knew of two times the father had provided money or items for the child.
The paternal grandmother testified that the father had provided several items for the care of the child, and, although she could not specify dates or amounts, she said she understood from the father that he was paying child support. She also testified regarding the refusal of the maternal grandmother to allow the father or her to visit the child.
Our thorough review of the record fails to disclose clear and convincing evidence that the best interests of the child would be served by terminating the parental rights of the father. While the evidence supports the determination that the child is dependent, there is also ample evidence suggesting that multiple, viable alternatives exist, and that the termination of the father’s parental rights at this time is improper. Accordingly, we find no error here.
Next, the grandmother contends that she should have custody of her grandchild, citing Daniels v. Trawick, 232 Ala. 466, 168 So. 561 (1936). In Daniels, following the mother’s death, the father requested custody of the child, who had resided with the maternal grandparents since birth. The trial court denied that request, citing evidence that the father had been unkind and inattentive to the mother during her illness and had been indifferent to the child and its needs. The trial court awarded custody to the grandparents, and our Supreme Court affirmed.
It is undisputed that the grandparents have been fully responsible for the care and custody of the child since the mother’s death, and that before the mother died, the mother and the child had lived with the grandparents since the child’s birth. Although the grandfather is disabled and receives Social Security disability benefits, he contends that he is physically able to provide for the care and nurturing of the child. The grandmother is employed, and, inter alia, is willing to provide medical insurance for the child. Although the grandparents are divorced and live separately, the evidence discloses that together they provide adequately for the child and are willing to continue providing for the child.
The grandmother cites Ex parte McLendon, 455 So.2d 863 (Ala.1984), to support her position that the father must prove that a change in custody would materially promote the best interests and welfare of the child. The record is devoid of any prior custody adjudication, nor will the record support a determination that the father relinquished his custodial rights. The standard set out in McLendon is simply inapplicable here.
Simply stated, the record contains ample evidence supporting the trial court’s determination to place legal custody of this dependent child with DHR and to allow DHR to make determinations regarding the child’s physical custody. Further, it is clear from the evidence that DHR’s recommendation is that the maternal grandmother retain physical custody. The record discloses DHR’s recommendations that visitation arrangements with the father and child are needed for adjustment and development of the parent-child relationship. Additionally, the trial *985 court’s order recognized the dysfunction of this family by its recommendation that all family members, both maternal and paternal, seek professional counselling. It appears from the record that the goal of DHR is to work with this extended family toward uniting the child with her only surviving parent, the father.
For the foregoing reasons, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, MONROE, and CRAWLEY, JJ., concur.