RUSSELL, Judge.
On July 26, 1991, M.C. (grandmother) petitioned the trial court for the termination of the parental rights of L.B. (mother) as to M.A.C. (child). Following proceedings in which evidence was presented ore tenus, the trial court denied the termination petition. The grandmother appeals.
Judicial intervention to protect the health and welfare of the child originally began in August 1988, when the grandmother sought and received ex parte custody of the child due to the mother’s alleged abuse and neglect of the child, as well as the mother’s alleged drug use. At that time the mother was granted visitation privileges. These privileges, however, were restricted in March 1989, after the mother was found in criminal contempt for violating the terms of visitation by removing the child from the state. Following a hearing in June 1989, the child was adjudicated dependent, and custody of the child, age five at the time, was awarded to the grandmother. All parties were then ordered to attend counseling as recommended by the counselor of the mental health center. The mother’s visitation was made contingent upon her compliance with psychological counseling and drug screening ordered by the court.
The grandmother’s July 1991 petition to terminate parental rights alleged that the mother had not supported the child, had failed to obtain psychological counseling or submit to drug screening as ordered by the court, and had not visited the child since June 1989. Also asserted was the need for stability for the child, the best interests of the child, and the additional financial support the child was entitled to receive and of which he had been deprived by his natural parents.
The child’s father filed a waiver of appearance and a consent to the termination of his parental rights on the day the hearing commenced. On February 11, 1992, after a lengthy trial, the trial court held that the grandmother had failed to meet her burden of proof, and her petition was denied.
It is well settled that natural parents have a prima facie right to the care and custody of their children. L.A.T. v. State Department of Human Resources, 588 So.2d 471 (Ala.Civ.App.1991). This pri-ma facie right can be overcome only by clear and convincing evidence that permanent removal from the parent would serve the child’s best interests. Id. It is this consideration, the best interests of the child, which lies at the heart of every proceeding to terminate parental rights. East v. Meadows, 529 So.2d 1010 (Ala.Civ.App.1988).
The trial court is given authority to terminate parental rights if it finds from clear and convincing evidence that the parents are unable or unwilling to discharge their responsibilities to and for the children. § 26-18-7(a), Ala.Code 1975. The trial court shall consider, inter alia, whether the parents have abandoned their children, whether the parents have problems with drug or alcohol abuse, and whether *1269 reasonable efforts to rehabilitate the parents have failed. § 26-18-7(a). If the children are not in the physical custody of their parents, the trial court shall also consider whether the parents have provided for the material needs of the children, whether the parents have maintained regular scheduled visits with the children, and whether the parents have adjusted their circumstances to meet the needs of the children according to agreements reached administratively or judicially. § 26-18-7(b).
In cases such as this, where a non-parent is the petitioner, the trial court’s determination is governed by the application of a two-pronged test. Ex parte Beasley, 564 So.2d 950 (Ala.1990). First, the court must conclude from clear and convincing evidence that the child is dependent. Id. Second, the court must consider and reject all other viable alternatives to termination of parental rights so that it can conclude that termination is in the child’s best interests. Id.
On appeal the grandmother insists that she met her burden of proof by presenting clear and convincing evidence that the mother was unable and unwilling to discharge her responsibilities to and for the child. She further asserts that the child’s need for security and continuity warrants the complete termination of the mother’s parental rights at this time.
The trial court heard extensive testimony from, among others, the grandmother, the mother, the mother’s sister, and a friend of the mother. This testimony was, to say the least, sharply contradictory. The grandmother testified that the mother — who married and moved to Georgia some five years ago — had not visited, called, or had anything to do with the child since the dependency hearing in June 1989. The mother, however, testified that she had visited the child several times since then and in particular in June 1990, after she gave birth to another child. She also testified that she had brought her child several gifts and, from time to time, gave the grandmother small amounts of cash as support for the child. The mother’s friend testified that she had driven the mother from Georgia to see the child on a number of occasions. The mother testified that her physician had advised her to stop travelling in early 1990, during the final months of her latest pregnancy. The mother also indicated that she had frequently called the grandmother’s home to speak to the child or to arrange visits, but that the grandmother had changed her phone number to an unlisted number sometime in 1990. She stated that the grandmother and her own sister have thwarted her attempts to maintain a relationship with the child. The mother’s sister — who by the terms of the dependency order was to supervise the mother’s visits — denied that she or the grandmother had prevented the mother from seeing the child. She maintained that the mother had not attempted to see the child and had never provided the child with gifts or material support.
The grandmother also claims that, since the dependency hearing, the mother has failed to adjust her circumstances to meet the child’s needs and that reasonable efforts to rehabilitate the mother have failed. She contends that the evidence shows that the mother,' who was 24 years old at the time of the trial, has not undergone the counseling and drug screening ordered by the court in 1989. Moreover, she points out that, since the dependency hearing, the mother has been charged twice with possession of marijuana and once with shoplifting. The mother, however, maintains that she has undergone drug screening and that she discontinued her sessions with the mental health counselor when the counsel- or did not schedule additional appointments. Further, she says that the court order provides for joint counseling with the grandmother, whose cooperation, she maintains, she has not received. The mother also claims that the drugs she was arrested with were not hers.
In its posthearing findings, the trial court noted:
“The evidence in this case is contradictory, and the court cannot, with any degree of certainty, determine who is lying. Regardless, the [grandmother] has failed to *1270 meet the burden of proof necessary to sustain her petition for termination of parental rights and that petition is hereby denied.”
The rule is that where the trial court is presented evidence ore tenus, its judgment will be presumed correct on appeal, and this court will not set it aside absent a determination that the judgment is so unsupported by the evidence as to be plainly and palpably wrong. Brooks v. State Department of Human Resources, 513 So.2d 632 (Ala.Civ.App.1987).
We have carefully reviewed the record in this case and conclude that there was no error in the trial court’s judgment. While even the uncontradicted testimony regarding some of the mother’s actions has given this court cause for concern about the mother’s judgment and her parenting skills, we find, with the trial court, that the evidence at this time is not so clear and convincing as to support the drastic measure of termination of parental rights.
The termination of one’s parental rights is a solemn matter; once effectuated, we know of no means of reinstating those rights. L.A.T., 588 So.2d 471. It would appear that the trial court — in balancing the rights and interests here involved— viewed the present arrangement whereby the grandmother retains physical custody of the child as a viable alternative to termination of the mother’s parental rights, in the sincere hope that the mother would soon discharge her responsibilities to her child. We cannot say that the trial court failed to look to the child’s best interests when making its judgment. We must note that the record shows that the grandmother has always provided for the child and has never demonstrated anything except love and affection for the child.
The grandmother has argued that the trial judge should have recused himself from hearing this case because, she says, he prejudged the matter prior to hearing all the evidence. As support for this argument, the grandmother points to comments the trial judge made on the record during the trial that, unless the grandmother provided more substantial grounds for termination than she had up to that point, he would be disinclined to grant her petition. We have examined the comments referred to by the grandmother, and the context in which they were made, and conclude that the trial judge, in making these comments, was emphasizing the heavy burden upon a party seeking termination of parental rights, and was not evidencing an intent to prejudge the case or to ignore testimony put on by the grandmother. We would also point out that the grandmother did not request that the trial judge recuse himself until the judge had heard the entire case and entered a final order. When the grandmother failed to object and to specify reasons demanding the judge’s disqualification prior to his entry of the order, she waived her right to later move for recusal. See Ross v. Luton, 456 So.2d 249 (Ala.1984).
In view of the above, the judgment of the trial court is affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.