740 So.2d 1089 (1998)
T.H.
v.
STATE DEPARTMENT OF HUMAN RESOURCES.
2970807.
Court of Civil Appeals of Alabama.
December 18, 1998.
Rehearing Denied January 29, 1999.
Certiorari Quashed August 20, 1999.
Richard Chesnut of Brinkley & Chesnut, Huntsville, for appellant.
*1090 J. Coleman Campbell and Lynn S. Merrill, asst. attys. gen., Department of Human Resources, for appellee.
Alabama Supreme Court 1980765.
MONROE, Judge.
T.H., the mother, appeals from the trial court's judgment terminating her parental rights to three of her children, ages 6 years, 4 years, and 17 months.
The Department of Human Resources ("DHR") became involved with T.H. in 1995 because of reports of possible abuse. T.H. admits that she spanked one of her children so hard that the child was bruised. Within the record, we find only this one allegation of physical abuse. There were no allegations of abuse regarding two of the children. DHR became further involved when it learned that the oldest child was having unsupervised visits with a convicted child molester, the child's alleged grandfather. DHR attempted to assess the children for possible sexual abuse. Two of these children were determined to be too young to assess; however, the oldest child was determined to have been sexually abused by the alleged grandfather. The oldest child was placed with a relative in Ohio, and the other two children were placed with T.H.'s sister.
The sister maintained physical custody for a few months, and then relinquished custody to DHR. In October 1995, DHR petitioned for temporary custody of those two children that had been in the sister's custody. Those children were found dependent and were placed in the custody of DHR. In May 1997, T.H. gave birth to a fourth child. DHR petitioned for temporary custody of this fourth child, and the court granted the petition.
In August 1997, DHR filed petitions to terminate T.H.'s parental rights as to the three children in DHR's custody. DHR moved to dismiss the petitions when a relative in California contacted DHR about the children. The relative's home was evaluated and determined to be sufficient for placement; however, the relative declined placement. Thereafter, DHR again filed petitions to terminate parental rights. A hearing was held on March 6, 1998, and on March 23 the trial court terminated T.H.'s parental rights as to the three children. The court also terminated the parental rights of the children's fathers. T.H. appeals.
Natural parents have a prima facie right to the care and custody of their children, M.C. v. L.B., 607 So.2d 1267 (Ala. Civ.App.1992), and it is presumed that parental custody will be in the best interests of the children. Bowman v. State Dep't of Human Resources, 534 So.2d 304 (Ala.Civ. App.1988). When a nonparent petitions to terminate parental rights, the trial court's determination is governed by a two-pronged test. M.C., supra; Ex parte Beasley, 564 So.2d 950 (Ala.1990). First, the trial court must determine from clear and convincing evidence that the child is dependent. Id. Second, the court must consider all other viable relative resources; if all are rejected, then the court can terminate parental rights. Id.
"If the children are not in the physical custody of their parents, the trial court shall also consider whether the parents have provided for the material needs of the children, whether the parents have maintained regular scheduled visits with the children, and whether the parents have adjusted their circumstances to meet the needs of the children according to agreements reached administratively or judicially. § 26-18-7(b)."
M.C., 607 So.2d at 1268-69. This court must also consider whether reasonable efforts to rehabilitate the mother were exhausted prior to terminating her rights, and whether such efforts failed. See Ezekiel v. State Dep't of Human Resources, 562 So.2d 524 (Ala.Civ.App.1990).
It appears from the record that after the two children were adjudicated as dependent in October 1995, DHR instructed T.H. to maintain a stable home and a stable job and to complete parenting counseling.
*1091 A social worker testified that eight months later, in June 1996, DHR decided to move to terminate parental rights because: the parenting counselor reported that she could go no further with T.H.; the parenting aide was dismissed because of an inappropriate relationship with T.H.; the psychologist's report raised questions regarding the mother's mental health; and T.H. had not maintained stable employment or a stable home.
The record shows that T.H. met with a counselor on a weekly basis from April 1995 to June 1996, for parenting instructions. The counselor stated that T.H. had good attendance at the sessions and was sincere. The counselor stated that T.H. did not have adequate parenting skills but that she was capable of learning. She stated that T.H. was motivated to learn at first, but that her interest decreased as it became obvious to T.H. that she was not going to get her children back.
There was testimony indicating that the counselor ended the counseling because T.H. had stopped opening up to her. The counselor stated that the sessions were difficult at the end, when the children were not in the home with T.H. She explained that it was difficult to teach parenting skills to someone who does not have a chance to practice them; therefore, the counselor stated, she saw no benefit in continuing the sessions. There have been no counseling sessions since June 1996.
T.H. was evaluated by a psychologist, whose deposition was admitted into evidence. In her deposition, taken in February 1998, the psychologist refused to give a hypothesis as to T.H.'s mental condition, stating that her reports and data were too old to rely on. The psychologist had seen T.H. one time, in July 1996.
In January 1996, DHR assigned a parenting aide to help T.H. improve her parenting skills. DHR dismissed the aide after 3 months. DHR claims that the aide and T.H. were having an inappropriate relationship. DHR explains that the aide had taken T.H. to have her nails done and that the aide had been "mothering" T.H. DHR did not assign T.H. a new aide.
A social worker testified that when she received T.H.'s case in June 1996, DHR had decided to pursue termination of T.H.'s parental rights. She testified that when T.H. asked her what she had to do to get her children back, she told T.H. that she had the case "tipped specifically for termination of parental rights." DHR states that the mother has not been able to maintain employment or to maintain a stable home environment for the children. T.H.'s work history reveals periods of unemployment; however, at the time of the hearing, T.H. was employed and had been with the same employer for more than six months. DHR states that her employment was only a temporary job, with no benefits.
After June 1995, when DHR decided to move to terminate T.H.'s parental rights, DHR decreased T.H.'s visitation to only one hour every other week and required that the visitation be supervised. DHR decreased visitation as a form of detachment, to prepare the children for the termination. The mother maintained visitation with the children until her parental rights were terminated by the juvenile court.
DHR did not provide any services to T.H. and made no further attempts to reunify the family after it decided in June 1996 to seek a termination of parental rights. One of the factors to be considered in determining whether to terminate parental rights is "[t]hat reasonable efforts by the Department of Human Resources or licensed public or private child care agencies leading toward the rehabilitation of the parents have failed." § 26-18-7(a)(6), Ala.Code 1975.
The record contains evidence indicating that T.H. was cooperative in regard to the services offered by DHR. The record indicates that T.H. might benefit from training in parenting, but that DHR chose not to replace the parenting aide or the counselor. *1092 DHR seems to blame T.H. for the inappropriate behavior of the parenting aide and for the termination of the counseling sessions. It is obvious from the social worker's testimony that DHR had determined years ago that T.H.'s parental rights should be terminated and that DHR was no longer willing to work to rehabilitate T.H.
Although in the trial court the evidence was presented ore tenus, we are compelled to reverse the judgment in this case. We are reminded that "a court should terminate parental rights only in the most egregious of circumstances." S.M.W. v. J.M.C., 679 So.2d 256, 258 (Ala. Civ.App.1996). Furthermore, termination of parental rights is an extreme action that cannot be undone; it is permanent. DHR seemed intent on terminating T.H.'s parental rights rather than attempting to improve her parenting abilities. DHR has the duty to make reasonable efforts to rehabilitate the mother so that family reunification might be attainable.
Furthermore, the social worker stated that there had not been a home study done on T.H.'s home since the children were removed from her custody in 1995. The social worker testified that she had not done a study of T.H.'s home because when she was assigned to the case, after June 1996, DHR had already decided to move to terminate T.H.'s parental rights. However, the record contains testimony indicating that DHR did a home study of what was alleged to be T.H.'s sister's apartment and that the home was approved. However, the social worker testified that she later learned that the apartment was actually T.H.'s and not her sister's. Moreover, the evidence shows that DHR had not updated its information on T.H.'s situation since before June 1996.
A requirement of evidence of current conditions or conduct relating to a parent's ability or willingness to care for his or her children is implicit in the requirement that termination of parental rights be based on clear and convincing evidence. Hamilton v. State, 410 So.2d 64 (Ala.Civ.App.1982). "[W]ithout evidence as to the parent's present ability to care for [the children] and existing conditions of her home and life style, there can be no `clear and convincing' evidence that the children's best interest would be served by terminating the parent's parental rights and placing [the children] in the permanent custody of the State of Alabama." Id. at 66. Thus, we conclude that the evidence presented was not so "clear and convincing" as to support "the last and most extreme disposition permitted by law, the termination of parental rights." See Bowman v. State Dep't of Human Resources, 534 So.2d 304, 306 (Ala.Civ. App.1988).
The fathers did not appeal from those portions of the judgments terminating their parental rights. That portion of the judgments terminating the mother's parental rights is reversed, and this case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
CRAWLEY and THOMPSON, JJ., concur.
ROBERTSON, P.J., concurs in the result.
YATES, J., dissents.
YATES, Judge, dissenting.
I respectfully dissent. I believe that there was clear and convincing evidence to support the trial court's order terminating the mother's parental rights.