* Note from the Reporter of decisions: This case in the Supreme Court carried the name Jackson County Department of Human Resources. *Page 782 
C.B., the mother, appeals from the trial court's judgment terminating her parental rights to her daughter and twin sons.
The procedural history is long and complicated, and it appears nothing would be *Page 783 
gained by providing many of the details of this history. In brief, the court system first became involved in this case in July 1991, when the Jackson County Department of Human Resources filed a petition alleging that the three minor children of C.B. and J.B. were dependents. After a trial, the children were found to be dependent and were placed in the custody of DHR. For the next several years, the children remained in the legal custody of DHR; they were in the physical custody of DHR with the exception of a five-month period ending in February 1993 in which they were returned to their mother. Although the mother successfully cared for the children during this period, she voluntarily returned the children to their foster home because their father had started drinking and she was concerned for their safety. The mother never regained custody of her children, although she did have many weekend visitations with them.
In August 1994, DHR filed for permanent custody of the children. On April 13, 1995, the juvenile court entered an order terminating the parental rights of C.B. and J.B. They both appealed to this court. However, the tape recording of the proceeding in juvenile court was not audible and therefore could not be transcribed. This court transferred the case to the circuit court for a trial de novo pursuant to Rule 28, Ala. R. Juv. P. On August 13, 1996, the trial was held and on December 10, 1996, the trial court entered an order terminating the parental rights C.B. and J.B. At trial, the father relinquished his parental rights, and he is not a party to this appeal. In response to the mother's postjudgment motion, the trial court, on March 26, 1997, entered an amended order requiring DHR to submit evidence regarding its efforts to locate alternative relative resources. A hearing was held on November 5, 1997, and on November 25, 1997, the trial court entered another order terminating parental rights. The mother appeals.
Natural parents have a prima facie right to the care and custody of their children, M.C. v. L.B., 607 So.2d 1267 (Ala.Civ.App. 1992), and it is presumed that parental custody will be in the best interests of the children. Bowman v. State Dep't of Human Resources, 534 So.2d 304
(Ala.Civ.App. 1988). When a nonparent is the petitioner in an action to terminate parental rights, the trial court's determination is governed by a two-pronged test. M.C., supra; Ex parte Beasley, 564 So.2d 950 (Ala. 1990). First, the trial court must determine from clear and convincing evidence that the child is dependent. Id. Second, the court must consider all other viable relative resources; if all are rejected, then the court can terminate parental rights. Id.
 "The trial court shall consider, inter alia, whether the parents have abandoned their children, whether the parents have problems with drug or alcohol abuse, and whether reasonable efforts to rehabilitate the parents have failed. § 26-18-7(a). If the children are not in the physical custody of their parents, the trial court shall also consider whether the parents have provided for the material needs of the children, whether the parents have maintained regular scheduled visits with the children, and whether the parents have adjusted their circumstances to meet the needs of the children according to agreements reached administratively or judicially. § 26-18-7(b)."
M.C., 607 So.2d at 1268-69.
The first issue the mother raises on appeal is whether the judgment terminating her parental rights is supported by sufficient evidence. The evidence indicates that DHR was contacted in 1991 regarding injuries to one of the twin boys, *Page 784 
who were at that time 5 months old. The mother had gone to the beach and had left the children in the care of relatives. DHR was unable to determine who had inflicted the injuries on the child. DHR filed a dependency petition. The trial court granted the petition and placed them in the custody of DHR. It was later determined that one of the twin boys suffered from cerebral palsy and was legally blind. The mother and father worked with DHR and maintained visitation with the children. After conducting several reviews, the court transferred physical custody to the mother in September 1992 with legal custody remaining in DHR. In February 1993, the mother returned the children to their foster home, explaining that the father had started drinking and had thrown a crowbar at her, and that she was concerned for the children's safety.
The mother maintained visitation with the children until her parental rights were terminated by the juvenile court in April 1995. According to the testimony of DHR social worker Melba Flowers, the mother's visitation history after she returned the children to the foster home is as follows: 12 visits from February 1993 to August 1993; nine visits from September 1993 to December 1993, with many of these visits being for the weekend; 12 weekend visits from January 1994 to August 1994; 3 visits from August 1994 to December 1994, although there were no visits between September 24 and December 24; and 4 visits from January 1995 to April 1995. Ms. Flowers also testified that the mother visited as often as she could, and that it was DHR's policy that visitation was not allowed once parental rights were terminated. Thus, the mother was not allowed visitation after April 1995. In fact, Ms. Flowers testified that she would not have permitted visitation unless the judge had ordered it. The trial court states in its judgment that the mother did not attempt to visit the children after March 1995; however, the record contains a petition for visitation filed by the mother in March 1996, stating that DHR would not allow her visitation and requesting that the trial court provide her visitation rights. In addition, the mother did visit one of the twin boys in the hospital in June 1995, where he was recovering from a head injury he suffered after he was run over by a four- wheeler while in the foster parents' custody.
DHR contends that the mother has not shown that she has the ability to care for her children. The foster mother testified that on several occasions the twin who has cerebral palsy was covered with mosquito bites when he was returned to her after visitation with his mother, and that the children were always dirty when they returned from weekend visitations. DHR also contends that the mother failed to take the children to the doctor when they got sick while they were visiting her. In addition, DHR states that the mother has not been able to maintain employment or to maintain a stable home environment for the children. DHR also notes that the twin with cerebral palsy must be taken to therapy on a regular basis. DHR contends that the mother's parental rights should be terminated so that the children will have some sense of permanency in their lives.
After carefully reviewing the record, we note that DHR's concerns appear to be warranted. However, in reviewing the factors set out in M.C., supra, we note that the mother has, to the best of her ability, maintained visitation, that she has paid child support for the children, that she has no history of drug or alcohol abuse, and that no one contends that she has abused the children. As Ms. Flowers admitted at trial, many of the mother's past difficulties were attributable to the father, and she is *Page 785 
now divorced from the father. The mother would obviously benefit from training in parenting, and although the father and mother did not complete their parenting courses, we note that Ms. Flowers testified that DHR now has funds to provide parenting lessons. It is obvious from Ms. Flowers' testimony that DHR had made a determination years ago that the mother's parental rights should be terminated and was no longer willing to work with the mother on rehabilitation:
 "Q. The question is this: even if today — August 12, 1996 — she were to change from what you said her previous lifestyle has been — this is before April of 1995, other than food stamps — and manifests and showed where the whole world could see undeniably before this court a change of lifestyle, that wouldn't change the Department's position?
 "A. Beginning today, is that what you are asking me, if she changes beginning today?
"Q. Yes.
"A. No. It's not going to change my position.
 "Q. If she changed it yesterday, that wouldn't change it either?
"A. No.
"Q. Or the day before?
"A. No.
 "Q. Or any change really since June, July, August of 1994?
 "A. I think at that point when the children had already been in foster care over 3 years — at that point when we filed the petition, that we were ready to make a permanent plan for these children. It was evident enough there was not going to be any change."
Furthermore, DHR had not updated its information on the mother's situation after April 1995 and before August 1996, the date of the second hearing. Even by the final hearing on November 5, 1997, DHR had not even visited the mobile home where the mother resided with her mother and stepfather; when DHR had done its previous home visit the mother was living in a housing project.
Although the trial court heard the evidence ore tenus, we are compelled to reverse its decision in this case. We realize that the trial court was faced with an unusual situation in this case, in that the petition to terminate parental rights had been filed two years before the de novo trial was held, and the majority of DHR's evidence was collected over one and one-half years before the trial. Nevertheless, we are mindful that termination of parental rights is an extreme action that cannot be undone; it is permanent. The mother's life has apparently changed since the petition was filed in 1994, yet DHR seemed intent on terminating her parental rights rather than attempting to improve her parenting abilities. The mother has failed to maintain a job, but poverty alone is not enough to warrant the termination of parental rights. Bowman, supra. Her children certainly deserve some permanency in their lives, but their mother deserves an opportunity to provide it for them. DHR has the duty to make reasonable efforts to rehabilitate the mother so that family reunification might be attainable.
We will also briefly address the mother's arguments regarding DHR's lack of current information regarding the mother and the relative resources. This is an unusual situation in that the case was tried de novo in circuit court approximately one and one-half years after the trial in juvenile court. During that time, DHR did not update any of its information on the mother's living situation or any of its information on the relative resources. When ordered to update its information, DHR sent letters to the three relatives whose names *Page 786 
were provided by the mother. Only one responded, the mother's mother, but no home inspection was conducted. DHR did not send the letters certified mail and cannot be certain that they were ever received. DHR is required in this case to provide evidence of recent attempts to locate viable alternatives. Wilson v. State Dep't of Human Resources,527 So.2d 1322 (Ala.Civ.App. 1988).
That portion of the judgment terminating the mother's parental rights is reversed and this case is remanded for further proceedings consistent with this opinion. That portion of the judgment terminating the father's parental rights is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Robertson, P.J., and Yates and Crawley, JJ., concur.
Thompson, J., concurs in the result.