YATES, Presiding Judge.
K.H.M., the mother, and D.L.I., Jr., the father, had a short relationship in 1995 when the father lived with the mother and her parents. The mother became pregnant. The relationship ended before the child was born. The father claimed that the relationship ended because of the mother’s infidelity. The mother admitted that she had had other relationships. The child was born in 1996. The mother sought child support; the father denied that the child was his. In May 1997, following a paternity test, the father was found to be the child’s biological father and he was ordered to pay child support, which was automatically deducted from his paycheck. The mother married R.M. (“the stepfather”) in October 1997.
On September 19, 2001, the father filed a petition in the juvenile court, alleging that the child was dependent. On September 28, 2001, the mother and the stepfather filed an adoption petition in the probate court. On that same day, the mother filed a petition to terminate the father’s parental rights in the juvenile court. On October 19, 2001, the father moved to amend his petition, stating:
“1. When Petitioner first consulted his former attorney, his interest was to establish visitation rights with his daughter and to petition for joint legal custody.
“2. That his former attorney felt it would be in his best interest to file a petition to modify custody.
“3. That Petitioner wishes to have his Dependent Petition for joint custody amended to petition for visitation and joint legal custody of the minor child.”
The' mother and stepfather moved to transfer the adoption petition to the juvenile court; the probate court granted that petition. Following a hearing, the juvenile court entered the following order:
“Matters concerning the aforesaid child are before the Court upon a Dependent Petition, as Amended, filed by the Father, seeking joint legal custody and visitation rights with the child; a Response and Counter-Dependent Petition, seeking termination of the Father’s parental rights, filed on behalf of the Mother; and a Petition for Step Parent Adoption, filed on behalf of the Step Father in Probate Court and transferred to this Court. Testimony was heard on several occasions, at which times all parties and Counsel were present, together with the Guardian Ad Li-tem, and certain exhibits were admitted into evidence, including testimonial depositions and expert opinion. At the conclusion of the last evidentiary hearing, Counsel and the Guardian Ad Li-tem were given an opportunity to discuss the possibilities of an agreed-upon settlement, but the Court has now been informed that such attempts were not successful and the parties have filed a waiver of additional evidentiary -hearings and stipulated that this matter should be decided by the Court based upon the evidence previously submitted.
*952 “The aforesaid minor child was born [in] 1996. The Mother had a relationship with the Father, but the same had broken up prior to the birth of the child and the Father did not have a significant part in the birthing or initial care of the child. During the year after the birth, the Father had opportunities to establish a relationship with the child but made no substantial attempt to do so. The Mother, however, admitted in her testimony that the Father may have had reasonable doubts concerning his paternity. A paternity action was filed with the assistance of [the Department of Human Resources] and the Father requested DNA parentage testing, which was performed and indicated that he was the biological parent. An Order establishing paternity and determining the Father’s child support obligation as $315.00 per month was entered in the Child Support Division of the Family Court in May, 1997. The Father did not seek visitation rights as part of that proceeding. A Wage Withholding Order was entered and child support has been deducted from the Father’s income and paid regularly and currently since the Order was entered.
“The Father made little, if any, effort to see the child immediately after the paternity proceeding and the Mother remarried her current Husband in October, 1997. The Mother’s Husband stepped in and has apparently been a loving and good stepfather to the child since that time. The Father made no substantial efforts to see the child until 1999 and those efforts are subject to disputed evidence. By that time, however, it is clear that the Mother and her Husband had decided that the child should not be told that she had a biological Father and it is doubtful that attempts by the Father to visit with the child would have been met with acceptance.
“During the year 2000, the Father began a more serious attempt to establish a relationship with the child and was approached by the Mother and stepfather with a proposal that he consent to a stepparent adoption. After a meeting between the parties, the Mother and stepfather apparently assumed that the Father would consent and went forward with plans for an adoption proceeding. The Father refused to consent to the proceedings and shortly prior to the stepfather’s Petition For Adoption being filed in Probate Court, filed his Dependency Petition in this Court, seeking custody and visitation rights.
“The primary issue before the Court is presented by the Mother’s Petition to terminate the parental rights of the Father. Should the father’s parental rights be terminated, his Petition for Custody and Visitation would be rendered moot ■ and should his parental rights not be terminated, the stepfather’s Petition for Adoption would be rendered moot. When one parent seeks to terminate the parental rights of the other, the Court is not required to make a specific finding of dependency but is governed by a two-prong test; the Court must first find that there are grounds for termination of parental rights and secondly, after such grounds are established, the Court must determine if all viable alternatives to termination have been considered and rejected such that termination of parental rights is in the best interests of the child. Ex parte Beasley, 564 So.2d 950 (Ala.1990). L.M. v. D.D.F., 840 So.2d 171 (Ala.Civ.App.2002). Grounds for termination of parental rights are codified in Ala.Code, 1995, § 26-18-7. The Court must find from clear and convincing evidence that the parent whose pa *953 rental rights are sought to be terminated is unable or unwilling to discharge his responsibilities for the child and that such is unlikely to change in the foreseeable future. In determining the parent’s inability or unwillingness to discharge his responsibilities, the Court is directed to consider certain facts or circumstances, the only one of which is relevant to the instant case being abandonment. The Mother alleges that although the Father has paid child support as ordered, he has not attempted to establish a relationship with or visit with the minor child.
“The evidence is clear that for a substantial period of time after his paternity was established, the Father made little or no effort to communicate with or establish visitation with the child, even considering the child’s young age. However, the evidence is also clear that after the Mother and her Husband decided to establish their own family and not tell the child that the Husband was a stepfather as opposed to a biological father, efforts by the biological father would have been rebuffed. Considering the fact that parental rights should only be terminated in the most egregious of circumstances, it is difficult to find that the Father’s neglect under these circumstances would be sufficient to sound the death knell on his parental rights. Ex parte Beasley, 564 So.2d at 952.
“However, assuming arguendo, that the biological Father’s failure to seek a relationship with the child while paying child support, might rise to the level of abandonment necessary for a determination that the grounds for termination of parental rights have been met, the Court must proceed further to determine that all viable alternatives to termination have been considered and should be rejected as not in the best interests of the child. Clearly, the Court cannot find, based on the evidence of the knowledge in the family and community, that the child’s parentage will be hidden from her forever and the Mother and stepfather admitted that they would have to inform the child of the truth when they felt the time was right. Also, it is clear that the child making the discovery of her parentage without proper preparation will be traumatic and detrimental. Considering the conflicting expert testimony as to when the subject should be broached, the Court cannot find that a professionally assisted learning process toward providing the child with the proof of her parentage is not a viable alternative and such would appear to be in the best interests of the child. Therefore, the Court cannot find that termination of parental rights is necessary to, or would produce, a desired result in maintaining the child’s ignorance of her true parentage.
“Likewise, the Court cannot find from the facts and circumstances presented, that it is clearly in the best interests of the child to prevent the eventual establishment of a relationship with her biological Father or that visitation between the Father and the child in the future would be contrary to the best interests of the child and is not a viable alternative to termination of parental rights when properly approached with proper professional advice and therapy. In other words, the Court does not find that it is in the best interests of the child to terminate the parental rights of the biological father merely to delay the child’s knowledge of the truth or to avoid or delay facing the same in an organized and therapeutic manner, merely to assist the stepfather in his desire to become an adoptive father.
*954 “In consideration of the evidence presented herein, the Court further finds and it is hereby,
“Ordered, Adjudged and Decreed as follows:
“1. That the petition For Termination of the biological Father’s parental rights, filed by the Mother, is due to be and the same is hereby DENIED.
“2. That in consideration of the fact that the parental rights of the biological Father have not been terminated and he has objected to the adoption by the stepfather, the Petition for Step-Parent Adoption, filed in the Probate Court and transferred to the Juvenile Court, is due to be and the same is hereby DISMISSED.
“3. That upon further consideration of the circumstances and the Father’s failure to actively assert his parental rights until the present time, the Court does not find that it would be in the best interests of the child to award the biological parents joint legal custody and further finds that the Mother should be awarded sole legal and physical custody of the child, subject only to visitation rights to be established for the biological Father.
“4. The Court reserves issues of visitation for further determination based upon a plan for informing the child of the truth of her parentage and the development of a relationship and eventual visitation schedule between the child and the biological Father. Such plan shall be developed with the professional advice and assistance of Dr. Guy Renfro, who testified as an expert witness in this cause. Counsel and the Guardian Ad Litem shall meet with Dr. Renfro with regard to his recommendations concerning the development of a plan and shall submit a proposal to the Court within thirty (30) days after the date hereof and the Court will enter such necessary Orders to implement such plan.
“5. That a copy of this Order be transmitted to Counsel for each of the parties and to the Guardian Ad Litem. The Guardian Ad Litem is expressly authorized to further provide a copy of this opinion to Dr. Renfro for purposes of compliance herewith.”
The mother and the stepfather filed a notice of appeal. Following a remand from this court, the trial court granted the parties’ joint motion to certify the order as final pursuant to Rule 54(b), Ala. R. Civ. P.
The mother and the stepfather argue that the trial court applied the wrong statute in its analysis. Specifically, they argue that the court should have applied the parental-rights-termination scheme set forth in the Alabama Adoption Code, § 26-10A-1 et seq., Ala.Code 1975 (“the AAC”), instead of the parental-rights-termination scheme set forth in the Child Protection Act, § 26-18-1 et seq., Ala.Code 1975.
The mother and the stepfather argue that § 26-10A-3 of the AAC provides that if any party whose consent is required fails to consent to the adoption, the proceeding will be transferred to the juvenile court for the “limited purpose of termination of parental rights.” They contend that the case should have then proceeded under § 26-10A-5 and § 26-10A-27, which provides that a stepparent may adopt a child so long as the child has lived with the stepparent for one year. They argue that under § 26-10A-16 and § 26-10A-7 consent of the natural father was implied under the facts of this case because the father abandoned the child. However, the mother and the stepfather specifically argued in a memorandum of law filed with the juvenile court (before the hearing) that the CPA was applicable. The memorandum stated:
*955 “5. As noted in the original Petition to Terminate Parental Rights, Chapter 18 of Title 26 of the Alabama Code, titled ‘Child Protection,’ essentially states that any interested party (here [the mother and the stepfather]) may petition the Court to terminate the parental rights of a natural parent. Section 26-18-7 provides certain grounds for the termination of parental rights. Further, § 26 — 18—7(a)(1) provides that if a parent has abandoned the child, ‘proof shall not be required of reasonable efforts to prevent removal or to reunite the child with parents.’ ...
“6. In further support of the termination, the Court should consider Alabama Code § 26-18-7(c) which provides in essence that there is a rebuttable presumption that abandonment has occurred when there is a mere four continuous months of unwillingness or inability to act as a parent....
[[Image here]]
“It should also be noted that under Alabama Code § 26-10A-10, notwithstanding the requirement of the consent from the father, his consent is not required if ‘(1) [His] rights with reference to the adoptee have been terminated by operation of law in accordance with the Alabama Child Protection Act § 26-18-1 through § 26-18-10.’ In other words, where abandonment is shown, termination of parental rights should as a matter of law be implied and found by this Court so that his consent to the adoption is not necessary.”
The mother and the stepfather cannot now claim that the application of the CPA (§ 26-18-7) was in error where they expressly asked the court to consider that law. See Tuscaloosa County v. Jim Thomas Forestry Consultants, Inc., 613 So.2d 322 (Ala.1992)(county’s contention on appeal that the trial court erred in instructing the jury was not reversible error where the county failed to oppose the instruction and affirmatively requested a charge containing the element that it assailed).
Further, this court in T.S. v. J.P., 674 So.2d 535, 538 (Ala.Civ.App.1995), held that, when an adoption proceeding also involves the termination of a parent’s parental rights, the AAC and the CPA must be read in para materia and that
“[t]he CPA clearly provides the standards to be applied by the court in determining whether to terminate parental rights, and nothing limits the application of the CPA only to parental rights termination cases originating from separate and independent actions in the juvenile court or apart from adoption proceedings. No substantive provisions for terminating parental rights exist in the AAC, because the substantive provisions are provided in the CPA.”
The mother and the stepfather next argue that the father abandoned the child as that term is defined under § 26-18-3(1). The father contends that he did not abandon the child because, he argues, he attempted to contact the child in 2000 and 2001. He further contends that he sent a Christmas gift and purchased a savings bond for the child in December 2001. He stated that he has paid child support, without fail, since he was adjudicated the father.
Section 26-18-3(1) provides:
“(1) Abandonment. A voluntary and intentional relinquishment of the custody of a child by a parent, or a withholding from the child, without good cause or excuse, by the parent, of his presence, care, love, protection, maintenance or the opportunity for the display of filial affection, or the failure to claim the rights of a parent, or failure to perform the duties of a parent.”
*956 Although the father’s attempts at establishing a relationship with the child were minimal, he did not forgo his parental duty of providing support and maintenance for the child after he was adjudicated the father. The family court found that there were grounds to question his parentage before he was adjudicated the father. The mother and the stepfather had not told the child that the stepfather was not her biological father, they had established their own family, and they 'did not plan on telling the child of her paternity until she was a teenager. The juvenile court inferred that any efforts by the father to establish a relationship with the child would have been rebuffed by the mother and the stepfather. The ore tenus rule applies in cases involving the termination of parental rights, Ex parte Johnson, 474 So.2d 715 (Ala.1985), and we cannot say that the trial court, after observing the witnesses, erred in its finding that the father had not abandoned the child.
“The significance of the biological connection is that it offers the natural father an opportunity that ,no other male possesses to develop a relationship with his offspring. If he grasps that opportunity and accepts some measure of responsibility for the child’s future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions to the child’s development.”
Lehr v. Robertson, 463 U.S. 248, 262, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983)(footnote omitted).
Finally, the mother and the stepfather argue that the trial court erred in allowing Dr. Guy Renfro to testify, because, they claim, the father “failed to engage in proper discovery.” They argue that the father misled them by advising them that Dr. Renfro would not testify at the hearing. The father stated that he never advised the mother and the stepfather that Dr. Renfro would not testify. The mother and the stepfather fail to cite any authority in support of their argument other than a passing reference to Rule 37, Ala. R. Civ. P. “An appellate court will consider-only those issues properly delineated as such and will not search out errors which have not been properly preserved or assigned. This standard has been specifically applied to briefs containing general propositions devoid of delineation and support from authority or argument.” Ex parte Riley, 464 So.2d 92, 94 (Ala.1985) (citations omitted). Failure to comply with the requirements of Rule 28(a)(10), Ala. R.App. P., provides this court with - a basis for disregarding those arguments. Whited v. Holmes, 816 So.2d 20 (Ala.2001).
Even if the mother and the stepfather had properly supported their argument, there was no reversible error. The following exchange occurred at the hearing:
“Mother and stepfather’s counsel: Your honor, just briefly we would object to Doctor Renfro’s testimony. We had an agreement between the parties’ lawyers that we would exchange the opinions of the witnesses. I was never given that, although I gave them Doctor Rogers’s opinion. That having been said, we object to his testimony.
“Court: Have you given a written report? .
“Father’s counsel: Judge, I told [counsel] he didn’t have to give me Doctor Rogers’s report and Doctor Renfro didn’t give me a written report, and he never gave me one.
“Mother and stepfather’s counsel: I’ll submit a letter later on explaining my point.
“Court: Well, there’s no motion for discovery and no discovery order. The witness may testify. Again Doctor Ren- *957 fro is well-known to the court, has testified many times, and he is accepted as an expert witness.”
After Dr. Renfro testified, counsel for the mother and the stepfather again objected to his testimony. The trial court stated that none of the parties had asked for pretrial discovery. Counsel for the mother and the stepfather argued that he had effectively been deprived of an opportunity to cross-examine Dr. Renfro because he had no prior knowledge of what Dr. Renfro’s testimony would be. The juvenile court then continued the case for a later hearing. However, on August 5, 2002, the parties filed a joint motion for waiver of any further hearings and stipulated that all the evidence in this case had been presented to the court. The mother and the stepfather clearly were given an opportunity to cross-examine Dr. Renfro at a subsequent hearing. However, they declined to do so. We cannot say the trial court erred in considering Dr. Renfro’s testimony.
AFFIRMED.
CRAWLEY, J., concurs.
PITTMAN, J., concurs in the result.
THOMPSON and MURDOCK, JJ., dissent.