MOORE, Judge,
concurring in part and dissenting in part.
I concur in that portion of the main opinion holding that the juvenile court did not err in conducting an in camera examination of the children without recording it.
*405 I also agree with Judge Bryan’s special concurrence that the mother has not properly raised as an issue for our review that the evidence is insufficient to sustain the juvenile court’s finding of abandonment. That said, however, I believe the record does not contain clear and convincing evidence that the mother abandoned her children. In several prior opinions in which a divorced parent sought to terminate the parental rights of the other parent, this court has held that the defendant-parent had not committed abandonment when the plaintiff-parent prevented, inhibited, or frustrated the defendant-parent’s visitation attempts. See Muncher v. Muncher, 509 So.2d 250 (AIa.Civ.App.1987); Talley v. Oliver, 628 So.2d 690 (AIa.Civ.App.1993); and S.M.W. v. J.M.C., 679 So.2d 256 (Ala.Civ.App.1996).
The record in this case demonstrates that, beginning in late 2000, the father, by his own admission, unilaterally terminated the mother’s visitation privileges, halted the children’s visitation with the maternal grandmother when he learned that the mother had also visited the children while they were in the maternal grandmother’s care, and rejected the mother’s request to restart visitation, eventually forcing her to file a motion in the divorce court to hold the father in contempt for interfering with her visitation privileges. These facts prove that the mother did not abandon her children, but was involuntarily restrained from visiting with them. At the very least, this evidence sufficiently contradicts any countervailing evidence tending to prove that the mother had abandoned the children, thereby making the evidence supporting a finding of abandonment less than clear and convincing. Nevertheless, an appellate court may not hold a trial court in error on grounds not argued on appeal. Thompson v. Skipper Real Estate Co., 729 So.2d 287, 289 n. 2 (Aa.1999); and Merchants Bank v. Cotton, 289 Aa. 606, 269 So.2d 875 (1972). As a result, we may not reverse the juvenile court for erroneously concluding that the mother had abandoned the children.
I am convinced, however, that the juvenile court committed reversible error by failing to properly consider the mother’s current conditions before terminating her parental rights and by failing to properly consider less drastic alternatives to termination of the mother’s parental rights.
The termination-of-parental-rights statute presents only two grounds for terminating parental rights. That statute permits a juvenile court to terminate a parent’s parental rights
“[i]f the court finds from clear and convincing evidence, competent, material, and relevant in nature, that [ (1) ] the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or [ (2) ] that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such condition is unlikely to change in the foreseeable future.”
Aa.Code 1975, § 26-18-7(a). In this case, the juvenile court terminated the mother’s parental rights based on the first prong of the statute. The juvenile court concluded that the mother had abandoned the children. Under § 26-18-7(c), Aa.Code 1975,[4] the mother’s abandonment raises a *406 rebuttable presumption that the mother was unable or unwilling to act as a parent. However, such abandonment does not conclusively establish that a parent is unable or unwilling to act as a parent.
“This court has consistently held that the existence of evidence of current conditions or conduct relating to a parent’s inability or unwillingness to care for his or her children is implicit in the requirement that termination of parental rights be based on clear and convincing evidence.”
D.O. v. Calhoun County Dep’t of Human Res., 859 So.2d 439, 444 (Ala.Civ.App.2003) (citing T.H. v. State Dep’t of Human Res., 740 So.2d 1089 (Ala.Civ.App.1998); Bowman v. State Dep’t of Human Res., 534 So.2d 304 (Ala.Civ.App.1988); and Hamilton v. State, 410 So.2d 64 (Ala.Civ.App.1982)). It follows that if evidence of the parent’s current conditions shows that the parent is, in fact, able and willing to discharge his or her responsibilities to the child, the presumption of unfitness raised by the parent’s abandonment of the child would be rebutted and the trial court could not rely on the first ground listed in the statute for terminating the parent’s parental rights.
The mother presented evidence indicating that at the time of the hearing on the petition seeking termination of her parental rights, she was able and willing to discharge her responsibilities to her children. The evidence was undisputed that the mother had maintained employment for over a year, earning $10.00 per hour; that she had remarried and had been residing in a trailer with her husband for over two years; that she had enrolled in college; that she was on parole; that she was drug-free; that she was an active participant and counselor in a court-referred drug program; and that she was saving $200 per month for her children and bought them toys that she had placed in a room in the trailer she had furnished for the children.
It is true that the termination-of-parental-rights statute requires the juvenile court to consider the failure of a parent to provide for the material needs of the child or to pay a reasonable portion of its support, but only if the parent is able to do so. See Ala.Code 1975, § 26-18-7(b)(l). The mother testified that she was unable to pay child support for long periods because of her unemployment. “[Pjoverty alone is not enough to warrant the termination of parental rights.” C.B. v. State Dep’t of Human Res., 782 So.2d 781 (AIa.Civ.App.1998). Moreover, a termination-of-parental-rights action is not the appropriate proceeding to enforce a child-support order. See Ex parte Brooks, 513 So.2d 614 (Ala.1987).
The juvenile court was also required to consider the mother’s failure to maintain consistent contact or communication with the children. Aa.Code 1975, § 26-18-7(b)(3). However, in light of the father’s admission that he had prevented the mother from visiting the children, the juvenile court could not have reasonably drawn any inference that the mother was presently unable or unwilling to discharge her responsibilities to her children based on her failure to maintain consistent contact and communication with the children in the past.
In Ex parte Brooks, supra, our supreme court declared that the 1984 Child Protection Act is designed to afford a legal means of terminating parental rights when continuation of those rights threatens the welfare of the child. Since this declaration, this court has consistently held that termination of parental rights is not appropriate in cases like this one in which the *407 children are safely residing with the custodial parent and the continuation of the noncustodial parent’s parental rights does not present any harm to the children. See In re Beasley, 564 So.2d 959 (Ala.Civ.App.1990); Miller v. Knight, 562 So.2d 274 (Ala.Civ.App.1990); Talley, supra; and S.M.W., supra. Rather, in cases involving petitions filed by a divorced custodial parent, this court has affirmed the termination of a noncustodial parent’s parental rights only in rare cases in which the custodial parent proved that the child would be harmed, either physically or emotionally, if the noncustodial parent’s parental rights were not terminated. See Thornton v. Thornton, 519 So.2d 960 (Ala.Civ.App.1987) (threat that mentally ill mother would act violently toward child, like she did when she shot and killed child’s four-year-old brother, warranted termination of parental rights); Sutton v. Elrod, 724 So.2d 551 (Ala.Civ.App.1998) (evidence that renewal of relationship with father who had been absent from eight-year-old child’s life for seven years would be detrimental to child justified termination of parental rights). This distinction flows from the principle that termination of parental rights is reserved for the most egregious circumstances, Ex parte Beasley, supra, like those represented in this latter group of cases. When the court has been confronted by cases falling into the former category, it has recognized that a less drastic alternative, usually maintaining the status quo, is viable and should be utilized. See, e.g., Miller v. Knight, supra.
In her brief to this court, the mother basically urges the court to adhere to its previous treatment of similar cases. She asserts that the juvenile court should not have terminated her parental rights when it could have simply allowed the father to maintain custody while she exercised her visitation privileges. The mother persuasively argues that the juvenile court should have followed the supreme court’s recent decision in Ex parte T.V., 971 So.2d 1 (Ala.2007). In T.V., our supreme court held that a mother’s parental rights should not have been terminated based on evidence that she had successfully rehabilitated from a drug addiction and was slowly building a relationship with her child. Rather, maintenance of the status quo— leaving custody with a foster parent with visitation by the mother — while the mother forged a stronger relationship with the child constituted a less drastic viable alternative to termination of the mother’s parental rights.
I agree with the mother that this case is remarkably similar to T.V. As in T.V., and as found by the juvenile court, the mother in this case has turned her life around since she lost contact with her children. Like the mother in T.V., after abandoning her children, the mother in this case has quit using drugs, has remarried, has established stable housing and employment, has attempted to restart visitation with her children, and has started counseling others to help them with their drug problems. The court in T.V. considered visitation a viable alternative to termination of the mother’s parental rights in order that the mother could foster her relationship with her child. That same principle applies with even more emphasis in this case because the children have never seen their mother drug-free and have never had an opportunity to bond with her in a rehabilitated condition.. Although the juvenile court did not have before it any recommendation from an expert or guardian ad litem that visitation would be in the children’s best interests, as was the case in T.V., and although the children themselves indicated that they did not wish to visit with their mother, the record contains no evidence demonstrating that visitation would harm the children. I do not agree with the main opinion that the factual differences between the present case and T.V. warrant a different outcome. Rather, *408 I believe the holding in T.V. applies equally to this case and that the juvenile court’s judgment terminating the mother’s parental rights should be reversed for the same reasons as those advanced in T.V.
Finally, I agree with Judge Bryan’s special concurrence noting that the goal in every termination-of-parental-rights case should be to protect the welfare of children by providing stability and continuity in their lives while at the same time protecting the constitutional rights of their parents. I simply believe that in this case that delicate balance does not require sounding the death knell on the mother’s parental rights. See K.H.M. v. D.L.I., 895 So.2d 950, 953 (Ala.Civ.App.2003) (quoting juvenile court’s order). This case does not involve a situation in which maintaining the mother’s parental rights would involve ripping the children from the only family they have ever known. See, ‘e.g., Ex parte W.T.M., 851 So.2d 55, 64 (Ala.Civ.App.2002) (Murdock, J., dissenting). I believe the juvenile court could have fashioned a visitation order that would have protected both the stability and the continuity of the children’s lives and the constitutional rights of the mother. Therefore, I respectfully dissent.

. Section 26-18-7(c) provides:
"In any case where the parents have abandoned a child and such abandonment continues for a period of four months next preceding the filing of the petition, such facts shall constitute a rebuttable presumption that the parents are unable or unwilling to act as parents. Nothing in this subsection is intended to prevent the filing of a *406 petition in an abandonment case prior to the end of the four-month period.”