PER CURIAM.
Following ore tenus proceedings, the trial court made a finding of dependency and ordered the termination of the parental *217 rights of L.M.P. (mother) and W.K. (putative father) in eighteen-month-old W.D.P. Permanent legal custody of the child was vested in the Alabama Department of Human Resources (DHR). Only the mother appeals. We affirm.
The dispositive issue on appeal is whether there is clear and convincing evidence that supports the trial court’s decision to terminate the mother’s parental rights.
It is well settled that a natural parent has a prima facie constitutional right to the custody of her child. This right will yield only to a showing by clear and convincing evidence that permanent removal from the parent is in the best interests of the child. Travis v. State Department of Human Resources, 547 So.2d 571 (Ala.Civ.App.1989). Where the state is a party to a custody matter, the trial court must apply a two-prong analysis when considering whether to terminate parental rights: first, the trial court must find by clear and convincing evidence that the child is dependent; second, if the court finds that the child is dependent, it must then determine from clear and convincing evidence that no viable alternative to termination exists. C.D.H. v. State Department of Human Resources, 568 So.2d 1237 (Ala.Civ.App.1990).
The record reveals that the mother was twenty years old at the time of trial and that she has always been complétely reliant on friends and relatives for her housing and financial support. For some time prior to and after the child’s birth in November 1989, the mother lived in numerous residences with W.K., one of two persons named as putative fathers in this case. Two months after the child’s birth, W.K. demanded that the mother and child move out. The mother was then taken into the home of her own mother (hereinafter, “grandmother”). The past relationship between the mother and grandmother, the record shows, had been less than ideal, and the grandmother told the mother at this time that the new arrangement would be short term only. The mother and child stayed with the grandmother for approximately one month. During this time the grandmother attempted to assist the mother by arranging for her to take the GED exam and scheduling an appointment with the state employment service. The employment service planned a job-skills examination for the mother and enrolled her in a program designed to assist her with day care and housing arrangements. Before taking the exam or starting the program, the mother moved out of the grandmother’s home, to another city. She did not return to attend the program. At trial the mother offered no explanation for her actions; however, she stated that the grandmother had indicated to her that she could no longer live with her.
After leaving the grandmother’s home in late January 1990, the mother and child moved in with the mother’s close friend, E.M., whom the mother described at trial as her “surrogate mother.” The mother had known E.M. since 1983 and had previously lived with her for a short time. E.M. testified that the mother had at times relied on her for money and for food and clothing for the child. On the weekend of February 9,1990, the mother left the child in the care of E.M. and traveled to another city, with the apparent purpose of visiting a friend and looking for a job and a place to live. The mother testified that she only intended for E.M. to babysit the child and that the child was not abandoned. When the mother was out of town, a tornado severely damaged E.M.’s home, necessitating that E.M. move in temporarily with relatives. When E.M. was unable to locate the mother, she notified the grandmother, informing her that she could not care for the child under the circumstances and asking her to pick up the child. The grandmother, however, was apparently unwilling or unable to care for the child herself. When she, also, was unable to locate the mother, she contacted the sheriff’s department, which in turn contacted the county DHR. DHR was unable to reach the mother at an out-of-town telephone number provided by E.M.; the people at that number indicated that they did not know the mother’s whereabouts or when she would be back. There *218 after, DHR filed a petition alleging the child’s dependency.
The mother appeared pro se at a detention hearing, where she averred that she presently had no way to provide for the child. On February 20, 1990, the juvenile court placed temporary custody of the child with DHR. According to the juvenile court’s order, the child was to remain in foster care while the mother attended counseling and demonstrated an ability to support herself and to secure suitable housing. A DHR caseworker then discussed with the mother a service agreement, which was to include counseling services, a visitation schedule, and provisions for homemaker services. The mother never returned to the DHR office to sign the agreement. However, she stated at trial that she understood the terms of both the court order and the service agreement and that she understood that her child was to remain in DHR’s custody until she showed that she was financially stable and could take care of the child.
The record shows that the mother missed the first scheduled counseling session with her caseworker and that from March 2, 1990, to April 3, 1990, she failed to contact the caseworker or to notify DHR of her whereabouts. The mother testified that in late February 1990 she left Alabama and went to Pennsylvania, where she remained until April. When she returned to Alabama in early April, she contacted the caseworker and visited the child for the first time since the detention hearing. The caseworker testified that she again set up counseling services for the mother but that the mother failed to attend a counseling session and another child visitation scheduled for the second half of April. The mother testified that during the next two-and-one-half months, she lived in a motel and stayed with any number of friends. DHR lost all contact with the mother again from April to August 1990.
The record also reveals that from July 1990 to the trial date in April 1991, the mother was in and out of jail, serving a series of jail sentences for writing bad checks in cities throughout the state. The mother testified that she missed the scheduled visit with her child in April 1990 because she had been arrested. She explained that she did not contact DHR or the child for several months because there were other outstanding charges against her and she feared being arrested again. She was released from jail only to appear at the termination proceeding, where she confirmed that additional bad check charges were pending against her in at least four other cities. She was expected to remain in jail until August 1991.
The record shows that from the time of the detention hearing to the time of the termination trial, the mother visited the child a total of three times: in April 1990, in October 1990, and on the trial date. At trial the grandmother testified that she did not think the mother was capable of raising the child. She also alleged that the mother had a history of leaving the child with various individuals for long periods of time. There was testimony indicating that the mother had not always ensured that the child was adequately clothed. However, no witness could cite other particular instances of seriously inadequate care.
Section 26-18-7(a), Ala.Code 1975, authorizes the trial court to terminate parental rights upon a finding, from clear and convincing evidence, that the parent is unwilling or unable to fulfill her responsibilities to and for the child and that such conduct is unlikely to change in the foreseeable future. In determining whether a parent is unable or unwilling to discharge her responsibilities to and for the child, the court shall consider, among other factors, whether reasonable efforts by DHR toward rehabilitation of the parent have failed. Section 26-18-7(a)(6).
Here, the evidence is clear that DHR’s attempts at rehabilitation were unsuccessful. Twice after the detention hearing DHR attempted to implement a service agreement with the mother; however, she failed to participate. She did not attend a single counseling session with her caseworker and failed to contact DHR for extended periods of time. Because she was continuously moving in and out of the *219 state, staying with various friends and acquaintances, she was unable to establish any sort of stable home environment. During this time she continued to rely completely on others for housing and financial support, working only sporadically at a number of short-lived jobs. Further, because of numerous incarcerations, she was unable to cooperate with DHR’s efforts toward her rehabilitation. At the time of the trial she faced the prospect of additional jail time. Clearly, she has been unwilling or unable to fulfill her responsibilities to the child, and her situation is unlikely to change in the foreseeable future.
Where, as in this case, the child is not in the physical custody of the parent, § 26-18 — 7(b), Ala.Code 1975, provides that the trial court shall consider the following: (1) whether the parent has provided for the material needs of the child or paid a reasonable portion of the child’s support where the parent is able to do so; (2) whether the parent has maintained regular visits with the child; (3) whether the parent has maintained consistent contact or communication with the child; (4) whether the parent has made efforts to adjust her circumstances to meet the needs of the child in accordance with agreements made with DHR.
The record reveals that since the child was placed in the temporary custody of DHR, the mother has not made any attempt to provide for the child’s material needs. She contributed nothing — in the way of money, clothes, or gifts — to the support of her child. As indicated above, she visited the child only three times in approximately fourteen months. Also, she has made little, if any, effort to adjust or correct her circumstances to meet the needs of the child. There is clear and convincing evidence to support the court’s finding that the child is dependent.
As to alternatives less drastic than termination of parental rights, the record reveals that DHR attempted to find relatives who would be willing resources for the child; however, these attempts were unsuccessful. The grandmother testified at trial that she is unwilling to offer her home as a resource. The child’s maternal grandfather apparently has very little to do with the mother or child. W.K., the putative father, is also not an alternative. He did not contact DHR to request visitation while the child was in DHR’s custody and failed to provide any support for the child. Although he sought custody, he never took steps toward completing the legitimation process. He and the mother were never married and lived together for only a short while. By all accounts, their relationship has now ended.
The mother contends that temporary placement of the child with E.M. is a viable alternative to termination of her parental rights and that the child should be so placed until the mother is able to provide a stable home and environment. Although E.M. did not contact DHR in this regard, she was present at the trial to testify that she would be willing to care for the child and house the mother until the mother can get her life in order. (The record indicates that DHR made no inquiry as to whether E.M. might be a possible alternative, for the stated reason that E.M. is not a relative.) It is apparent that E.M. cares for the child and mother and that, while there is no blood relationship, a close attachment exists nonetheless. However, we note that the trial court specifically considered E.M. as a possible resource and ruled out this alternative. The court placed particular emphasis on E.M.’s testimony that she would help the mother “one more time.” The mother’s past history — and her continuing inability to adjust her conduct to meet her obligations to the child — is not such that we can conclude her situation will stabilize without protracted travail. While the record indicates that E.M. has assisted the mother in the past, the evidence suggests that this assistance has not been ongoing and that the mother did not avail herself of such assistance at times when it might have been advantageous to both her and the child. While such is not disposi-tive, we would again note that E.M. did not present herself to DHR as an available resource at any time before the trial.
The determination made by a trial court after ore tenus proceedings is presumed *220 correct and will not be disturbed on appeal unless it is so unsupported by the evidence as to be plainly and palpably wrong. Travis, 547 So.2d 571. After an extremely careful review of the record, we cannot find evidence to defeat the trial court’s finding that no viable alternative to termination exists.
In addition to the stated dispositive issue, the mother argues that because she was not provided with an attorney at the detention hearing, the trial court erred in allowing the state to allege her noncompliance with the terms of the original order of temporary custody. The record indicates that the mother’s current counsel was appointed by the court on February 20, 1990, under a provision of the original order. Further, the case was judicially reviewed by the court in June 1990, at which time another order issued notifying the mother’s counsel that the state intended to file a petition to terminate parental rights. The issue the mother now raises could properly have been raised only upon a timely appeal from one of these 1990 judgments. No appeal having been taken from one of these judgments, the issue cannot be here raised, as it constitutes an unauthorized collateral attack on judgments regular upon their face. Morgan v. Lauderdale County Department of Pensions & Security, 494 So.2d 649 (Ala.Civ.App.1986).
Because the trial court had before it clear and convincing evidence that the child was dependent and that there was no viable alternative to the termination of parental rights, the court’s judgment is due to be affirmed.
AFFIRMED.
All the Judges concur.