This case involves the termination of parental rights.
On May 22, 1992, the Elmore County Department of Human Resources (DHR) filed a petition for the removal of R.T.S., an infant child, from the custody of his mother, to temporary custody, alleging that the mother was either unwilling or unable to properly care for the child. Following an ore tenus proceeding, the trial court granted DHR's request for temporary custody; it found that DHR had made all reasonable efforts to avoid the removal of the child from the mother's care, that DHR had properly determined that there were no appropriate relative resources available, and that DHR had properly determined that temporary placement in foster care was in the best interests of the child.
The record reveals that for more than a year, numerous attempts were made by DHR to assist the mother and other family members in providing a stable environment *Page 747 
suitable to meet the needs of the child. DHR's case history, dated November 5, 1993, indicated that the mother paid little attention to the child when she attended scheduled visits, that she terminated some scheduled visits early, and that the mother simply failed to attend other scheduled visits. The mother and her family were informed in July 1993, that DHR would pursue the termination of parental rights for the purpose of adoption. The mother apparently made no contact with DHR after that time.
Ultimately, in November 1993, DHR filed a petition for the termination of the parental rights, stating that the mother, the alleged father, and extended family members who might have been potential relative resources, were unable to care for this child, who is a multiple-needs child with severe medical problems requiring constant and intensive care and supervision. Following ore tenus proceedings, the trial court found that the child was dependent, that no less drastic alternatives were available, and that it was in the child's best interests to terminate the parental rights. The custody of the child was awarded to DHR to pursue placement for adoption. Only the mother appeals.
On appeal, the mother contends that the trial court incorrectly applied Ala. Code 1975, §§ 26-18-1 to -10, in determining that her parental rights should be terminated. A trial court may terminate parental rights:
 "(a) If the court finds from clear and convincing evidence, competent, material and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents. In determining whether or not the parents are unable or unwilling to discharge their responsibilities to and for the child, the court shall consider . . . the following:
". . . .
 "(2) Emotional illness, mental illness or mental deficiency of the parent . . . of such duration or nature as to render the parent unable to care for needs of the child;
 "(3) That the parent has tortured, abused, cruelly beaten or otherwise maltreated the child, or attempted to torture, abuse, cruelly beat or otherwise maltreat the child, or the said child is in clear and present danger of being thus tortured, abused, cruelly beaten, or otherwise maltreated as evidenced by such treatment of a sibling;
". . . .
 "(6) That reasonable efforts by the Department of Human Resources . . . leading toward the rehabilitation of the parents have failed."
Ala. Code 1975, § 26-18-7.
A natural parent has a prima facie right to the custody of his child, unless it can be proven by clear and convincing evidence that permanent removal of the child from the parent's custody would serve the best interests of the child.L.N. v. State Dep't of Human Resources, 619 So.2d 928
(Ala.Civ.App. 1993). The trial court acknowledged the mother's testimony that she had attended two parenting classes, that she was willing to learn more about caring for her child, and that she planned to improve her circumstances; however, the trial court also acknowledged other evidence revealing that the mother had failed to make use of available programs and training designed to help her care for her child and to work toward reunification. The trial court noted the mother's lack of interest in the child and her failure to maintain sufficient contact "to actively keep herself abreast of the child's needs." The trial court concluded that "[t]here is simply no reasonable hope whatsoever for the situation to improve to the point where this child could be returned without significant danger to him." The trial court also expressed paramount concern for the child's needs.
In determining the child's best interests, the trial court must consider whether the parents have the physical, financial, and mental ability to care for the child.J.L.B. v. State Department of Human Resources, 608 So.2d 1367
(Ala.Civ.App. 1992). In the instant case, there was testimony regarding *Page 748 
the mother's mental ability to comprehend her child's special, multiple needs, and the mother's physical and financial ability and willingness to respond to her child's needs. The record contains ample testimony regarding the mother's lack of stability and continuity in her living situation, her employment, and her interest in the child. A case worker testified that the mother did not have the ability or the interest to provide the special care needed by the child.
When the state seeks to terminate one's parental rights, a two-pronged test is applied by the trial court. Ex parteBeasley, 564 So.2d 950 (Ala. 1990). The trial court must find clear and convincing evidence that the child is dependent, and the trial court must find that there exist no viable alternatives to the termination of the parental rights. B.O. v.Department of Human Resources, 628 So.2d 805 (Ala.Civ.App. 1993). The record reveals that this child was born prematurely and that he has multiple and complex special medical needs. There was testimony that the child's general and special care had been neglected, and that the mother's attitude toward DHR assistance was non-responsive. The record is replete with evidence regarding the diligent but unsuccessful attempts made by DHR over an extended period of time to work with the mother and other relatives in providing assistance and training to care for the child's general and special needs. These reunification efforts and attempts to assist the mother have been ongoing since the child was only a few weeks old. At the time of the hearing, the child was almost two years old. A DHR worker testified that the termination of parental rights was in the child's best interests, and that an adoption possibility existed.
The trial court order stated:
 "This child deserves more than endless foster care. This Court, indeed, would be doing him a complete disservice to do anything other than terminate parental rights and allow him to be placed for permanent adoption with a loving family capable of providing a stable home environment and financially able to meet his extensive medical needs."
The trial court's judgment follows the presentation of ore tenus evidence and is presumed correct. B.O., supra. The record supports the trial court's findings, and we find no error. Based on the foregoing, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, J., concur.