876 So.2d 1151 (2003)
V.O.
v.
STATE DEPARTMENT OF HUMAN RESOURCES.
2020541.
Court of Civil Appeals of Alabama.
October 17, 2003.
*1152 Brent L. Callihan, Pelham, for appellant.
William H. Pryor, Jr., atty. gen., and J. Coleman Campbell, deputy atty. gen., and Lynn S. Merrill and Connie M. Carraway, asst. attys. gen., Department of Human Resources.
YATES, Presiding Judge.
On October 1, 2002, the Shelby County Department of Human Resources ("DHR") petitioned for the termination of the parental rights of V.O., the mother, as to her three minor children.
Following ore tenus proceedings on December 11, 2002, the court, at the request of DHR, suspended termination proceedings to afford the mother, who had recently started drug and alcohol treatment, additional time to present evidence as to whether she would be capable of parenting the children in the foreseeable future. On February 12, 2003, the court terminated the mother's parental rights, finding that the children were dependent; that the mother was unable to provide for the children and that she would be unable to do so in the foreseeable future; that DHR had expended reasonable efforts to reunify the family, to no avail; that no viable alternatives to termination existed; and that termination was in the best interests of the children.[1] The mother's postjudgment motion was denied, and she appeals.
The termination of parental rights is governed by § 26-18-7(a), Ala.Code 1975, which provides:
"(a) If the court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition *1153 is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents."
This court has stated that when evidence is received ore tenus in a case involving the termination of parental rights, the judgment of the trial court is presumed to be correct and will be set aside only if the record shows the judgment to be plainly and palpably wrong. L.A.G. v. State Dep't of Human Res., 681 So.2d 596, 598 (Ala.Civ.App.1996). "`A natural parent has a prima facie right to the custody of his child, unless it can be proven by clear and convincing evidence that permanent removal of the child from the parent's custody would serve the best interests of the child.'" Id. at 598 (quoting T.M.S. v. Elmore County Dep't of Human Res., 647 So.2d 746, 747 (Ala.Civ.App.1994)). The paramount concern of the court in these proceedings is the best interests of the child. In determining the best interests of the child, the court must consider whether the parents are physically, financially, and mentally able to provide for the child. Id.
Additionally, when the State seeks to terminate a parent's parental rights, the court must apply a two-pronged test: First, the court must find that there are grounds for the termination of parental rights. Ex parte Beasley, 564 So.2d 950 (Ala.1990). Second, after the court has found that there exist grounds for the termination of parental rights, the court must inquire as to whether all viable alternatives to the termination of parental rights have been considered. Id. at 954. Once the court has complied with this two-pronged test, it can order the termination of parental rights. Id.
First, the mother argues that there was no clear and convincing evidence presented at trial to warrant the termination of her parental rights. We disagree.
The record shows that as early as November 1991 DHR had determined that reports that the mother provided inadequate supervision and that she posed a substantial risk of physical injury to one of the children were "indicated." Although DHR had received another report alleging that the mother posed a substantial risk of physical injury to the children, that the mother had a substance-abuse problem, and that the children had inadequate personal hygiene in July 2001, it did not complete an investigation because it was unable to locate the family. However, on September 1, 2001, the Montevallo Police Department contacted DHR, requesting immediate placement of the children, who had been in a vehicle with the mother when she was arrested for public intoxication and child endangerment. The children were initially placed with their paternal grandmother, who refused Family Options services and later lost custody of the children for failing to comply with a safety plan.[2] DHR then attempted to place two of the children with their putative father. However, DHR determined that placement with the putative father was not feasible after discovering several conflicts with his work schedule and because he tested positive for drugs during every random screening, failed to regularly visit with the children and to attend court hearings and Individualized Service Plan meetings, was cohabiting with a person with an indicated child-abuse and neglect report, and was unwilling to change his lifestyle in order to better parent the *1154 children. The children were then placed in foster care, where they remain.
DHR expended reasonable efforts to reunify the mother and the children. DHR informed the mother that she would need to address her substance-abuse problem in order to regain custody of her children, and it repeatedly offered assistance in doing so, to no avail. The record indicates that from September 2001 to September 2002 the mother continuously denied that she had a substance-abuse problem, despite repeatedly testing positive for barbiturates, benzodiazepines, THC,[3] methamphetamine, OxyContin, and cocaine. Following her arrest in Montevallo, the mother was subsequently arrested for "driving under the influence" ("DUI") in Helena and for possession of a controlled substance in Shelby County. The results of two psychological evaluations suggested that the mother needed inpatient treatment. DHR offered to provide such treatment; however, the mother refused the treatment.
In addition to the requirement that she be drug and alcohol free, the mother was instructed that she must also obtain stable housing and employment. Since her initial involvement with DHR, the mother has failed to obtain stable housing, instead opting to live with various friends and reportedly sleeping in the woods or in a vehicle. Similarly, the mother has failed to obtain stable employment. Although the record indicates that at the time of the hearing the mother was employed, she often changed jobs, and some of her jobs lasted for only three to four months. In fact, her employment had been terminated from one of those jobs for theft.
DHR also arranged weekly visitation between the mother and the children, offering to provide transportation if necessary. The mother missed several visits with the children, giving explanations of a lack of transportation, illness, employment, out-of-town excursions, and incarceration. After DHR unsuccessfully attempted to place the children with the paternal grandmother and the putative father, all other potential relative placements either declined custody or failed to reply to inquiries concerning custody of the children.
DHR petitioned for termination of the mother's parental rights on October 1, 2002. Although the court had sufficient evidence upon which to terminate the mother's parental rights at the December 11, 2002, hearing, it did not do so because DHR agreed to allow the mother additional time to prove she could parent the children. In reaching its decision to suspend the termination proceedings, the trial court took into consideration the mother's entering the Drug Court program in Shelby County in September 2002.[4] As a condition of suspending the termination proceedings, the mother agreed to comply with the following: to attend monthly court-ordered hearings; to visit the children; to attend counseling; to obtain stable housing and employment within 30 days; and to obey the law and Drug Court regulations. The mother understood and agreed that her failure to comply with those requirements, regardless of the reason, *1155 would and should result in the termination of her parental rights.
During a February 4, 2003, hearing, the court learned that the mother had violated a Drug Court regulation by consuming Nyquil brand cold medicine on December 25, 2002. Drug Court regulations prohibit the consumption of alcohol, including medicines that contain alcohol. The mother was incarcerated for one week for violating Drug Court policy. The mother testified that she was subsequently incarcerated for failing to appear for trial on a DUI charge in Alabaster, although she was aware, before the December 11, 2002, termination hearing, that she had to appear for trial on the DUI charge. The mother admitted that she had missed several visits with the children during and after her incarceration. She also failed to attend individual counseling sessions during and after her incarceration. Although the mother testified that she had acquired stable housing, she was terminated from her job because she was incarcerated.
Finally, the mother argues that terminating her parental rights would not be in the best interests of the children. This court has stated that the best interests of the children is paramount in termination-of-parental-rights cases. In determining the best interests of the children, the trial court considered the mother's physical, financial, and mental ability to provide for the children. L.A.G., supra. The record in the present case indicates that the mother abused alcohol and drugs without regard for the welfare of her children, despite DHR's repeated offers of assistance in overcoming her addiction. Even after the mother sought treatment in overcoming her substance-abuse problem, albeit in an effort to avoid incarceration in a state penitentiary, she again failed to take the steps necessary to regain custody of her children by violating Drug Court policy, subsequently being incarcerated, missing visits with the children, missing counseling sessions, and losing her job.
Based on the foregoing, we cannot say that the trial court erred in finding that termination of the mother's parental rights was in the best interests of the children.
AFFIRMED.
THOMPSON, PITTMAN, and MURDOCK, JJ., concur.
CRAWLEY, J., dissents.
CRAWLEY, Judge, dissenting.
Although I agree that the mother's parental rights could have been terminated at an earlier time based upon her history of denial of her substance-abuse problem and her failure to achieve the goals set for her by the Department of Human Resources ("DHR"), I cannot agree that, in February 2003, the mother's rights were appropriately terminated.
DHR filed a petition to terminate the mother's parental rights to her three children in October 2002. When the case came to trial in December 2002, the mother testified concerning her addiction to alcohol and drugs, admitting that she had not put her children first in her life since August 2001. DHR and the mother agreed in open court to continue the termination hearing based upon the mother's progress in Drug Court, a drug-rehabilitation program she had begun in September 2002 after her conviction for possession of a controlled substance. DHR had several requirements that the mother agreed to meet. Specifically, DHR required the mother to find her own residence within 30 days of the hearing; to maintain employment; to comply with all requirements of the Drug Court, including passing all drug tests; to attend all counseling sessions; and to attend all scheduled visitations. *1156 The mother agreed to these requirements in court on December 11, 2002.
The mother received a day-pass from the Drug Court work-release facility on Christmas Day. She spent that day at a friend's home. She testified that she was suffering from a bad cold or sinus infection and that her friend offered her some NyQuil, an over-the-counter cold medication. The mother admitted that Drug Court regulations required her to either seek permission from or to at least notify in advance Drug Court personnel regarding any use of over-the-counter medication. When the mother returned to Drug Court, she was "punished" for the rules infraction by being incarcerated in the Shelby County jail for approximately one week. Because the mother had not appeared in the Alabaster City Court on a pending "driving under the influence" ("DUI") charge,[5] she was transferred from the Shelby County jail to the Alabaster City jail, where she remained for another few days.
During her incarceration, the mother missed two scheduled visits with her children. She also missed a counseling appointment. The Monday following her release from jail, she again missed visitation because the man upon whom she relied for transportation was unable to get off from work in time.
I do not agree with the majority's conclusion that the evidence clearly and convincingly supports the trial court's ultimate conclusion that the mother's current inability to care for her children is unlikely to change in the foreseeable future. The mother was admittedly resistant to early efforts at reunification by DHR. However, since her conviction and her participation in Drug Court, the mother has made significant progress toward overcoming her addiction. She had, until she was incarcerated for her unauthorized use of NyQuil, maintained visits with her children. Indeed, the court report in the record indicated that the mother enjoyed the visits and that, for the most part, the mother's behavior at visitations was appropriate. The mother also made sure that she was employed. Although she lost her position at a local Subway fast-food franchise because of her incarceration, she had sought and secured other employment by the February 2003 trial. In fact, the mother testified that she had an interview concerning a job at a local restaurant on weekends to make additional money with which to pay her court fines and expenses. In my opinion, to negate the progress that DHR had noted and commended the mother for in the three months before the December 2002 trial, the mother would have had to do more than miss one counseling appointment and three visitations.
I realize that the mother had agreed to DHR's conditions. DHR's counsel made very clear its position that the mother's missing any scheduled visitations or appointments would not be excused no matter the reason for the failure. I understand DHR's insistence on a parent's meeting necessary goals during the reunification process. However, I find it perplexing that DHR would, under the guise of attempting to prevent termination of a parent's rights, impose such stringent and unforgiving conditions on the parent that DHR could have anticipated the parent would fail to meet those conditions, especially if she was, as the trial court described in its judgment, "in a fragile state of sobriety."
The mother has made significant strides, strides that DHR even commended her for *1157 at trial. However, DHR required the mother to leave the work-release/treatment facility of Drug Court, despite DHR's counsel's admission that the mother's drug-court coordinator "might have some concerns about her leaving for his own treatment issues." DHR's counsel commented during the December 2002 trial that treatment counselors consider relapsing part of the recovery process; he referred to these relapses as "bumps in the road." After making this acknowledgment, DHR's counsel stated that the mother would not be allowed any bumps in the road and said that any mistake would result in DHR seeking the termination of her parental rights.
Certainly, repeated failure of a parent to adjust his or her circumstances to meet the needs of his or her children could result in termination of his or her parental rights. See C.D.H. v. State Dep't of Human Res., 568 So.2d 1237 (Ala.Civ.App.1990) (affirming the termination of parental rights where the mother had served three prison sentences in five years). However, small setbacks in the lives of parents who have made significant progress toward reunification should not automatically result in "the last and most extreme disposition permitted by law, the termination of ... parental rights." Bowman v. State Dep't of Human Res., 534 So.2d 304, 306 (Ala.Civ.App.1988); Ex parte Ogle, 516 So.2d 243 (Ala.1987). In any case dealing with a parent's recent progress toward reunification, the trial court is required to determine "whether the parent's recent progress was substantial and consistent and, therefore, indicative of a willingness and ability to maintain that progress, or whether the parent's efforts were late, incomplete and, therefore, unconvincing, measures taken only in anticipation of the termination-of-parental-rights hearing." J.D. v. Cherokee County Dep't of Human Res., 858 So.2d 274, 277 (Ala.Civ.App.2003).
The trial court characterized the mother's progress as "too little too late." I disagree. Although the mother's earlier resistance to DHR's attempts at reunification might have, at the time, been a basis for termination, her progress at the time of the December 2002 trial and her continued participation in the Drug Court program, even after suffering the consequences of a rules infraction, seem to indicate that the mother has taken very seriously her need for treatment and that she has focused on the goal of changing her lifestyle to accommodate the needs of her children. The evidence presented at trial concerning the current conditions or conduct relating to the mother's ability to care for her children is simply not clear and convincing evidence that termination is warranted at this point because a less drastic alternative to termination  i.e., permitting the mother to complete the Drug Court program, pursue continued counseling, and achieve financial independence while the children continue to be properly cared for in their foster home  is clearly available. The trial court's conclusion that this mother's condition is unlikely to change in the foreseeable future is likewise unsupported by the necessary quantum of proof. I respectfully dissent.
NOTES
[1] The children were fathered by two different men. Both fathers' parental rights were also terminated; they have not appealed.
[2] The paternal grandmother died sometime between the removal of the children from her custody and the December 11, 2002, hearing.
[3] THC or tetrahydrocannabinol is the active ingredient in marijuana.
[4] In order to participate in the Drug Court program and avoid serving time in the penitentiary, a defendant must first plead guilty to the offense. Next, the court adjudicates the defendant guilty but postpones sentencing pending the defendant's enrollment in and successful completion of the Drug Court intensive drug-treatment program. If the defendant fails to comply with the rules of the program, the court may then impose the appropriate sentence against the defendant.
[5] The record indicates that the Alabaster City charge had been "put on hold" pending the mother's completion of Drug Court. Apparently her incarceration triggered the activation of the dormant warrant.