983 So.2d 394 (2007)
A.J.H.T.
v.
K.O.H.
2051035.
Court of Civil Appeals of Alabama.
July 27, 2007.
Certiorari Denied October 26, 2007.
*395 Glenn A. Shedd, Fort Payne, for appellant.
Ralph K. Strawn, Jr., of Henslee, Robertson, Strawn & Sullivan, L.L.C., Gadsden, for appellee.
Alabama Supreme Court 1061604.
PER CURIAM.
A.J.H.T. ("the mother") appeals a judgment terminating her parental rights regarding J.H., born in February 1999; K.H., born in April 1997; and B.H., born in July 1994 (J.H., K.H., and B.H. are hereinafter collectively referred to as "the children"). We affirm.
On November 15, 2005, K.O.H. ("the father") petitioned the juvenile court to terminate the mother's parental rights regarding the children. The juvenile court held an ore tenus proceeding on July 31, 2006, regarding the termination petition. On August 31, 2006, the juvenile court entered its judgment terminating the mother's parental rights. That judgment states, in pertinent part:
"After due consideration of the testimony received and an in-camera interview *396 with the minor children, the Court finds as follows[:] 1. That the Defendant/mother . . . has successfully maintained stable housing and employment for over one year; 2. The Defendant/mother . . . has a prior history of drug use and a felony conviction, as does the Plaintiff/father . . .; 3. Both parties have successfully remained drug free for over two years.
"However, the Defendant/mother has failed to provide any support or maintenance for the minor children and has not maintained regular visits nor any form of contact or communication with the minor children for over four years. This lack of effort or inability to adjust her circumstances to meet the needs of the minor children constitutes abandonment of the said minor children. . . . "
On September 13, 2006, the mother filed a notice of appeal and requested, among other things, certification of the record as adequate for appellate review or, in the alternative, a transfer of the case to the circuit court for a trial de novo. The juvenile court then certified the record as adequate for appellate review on September 26, 2006. On December 7, 2006, the mother filed a motion titled "Motion to Reconsider Certification of Record as Adequate." The juvenile court subsequently denied that motion.
On appeal, the mother first argues that the juvenile court erred by certifying the record as adequate for appellate review because, she says, (1) the parties did not agree to the in camera examination of the children and (2) the juvenile court conducted the in camera examination without recording it.
The transcript of the proceeding does not indicate when the juvenile court suspended the proceeding to conduct the in camera examination. However, Robert Beck, the father's attorney, submitted an affidavit to the juvenile court stating that the parties had agreed to the in camera examination and were aware that the juvenile court would conduct that examination without the presence of a court reporter or a recording device. The mother neither made an objection to the in camera examination at trial that was noted on the record nor submitted an affidavit disputing the allegations in Beck's affidavit. The mother cannot induce error of the juvenile court by agreeing to the in camera examination with knowledge that it was not going to be recorded and argue on appeal that the juvenile court erred on this basis. We therefore cannot reverse the juvenile court's order certifying the record as adequate for appellate review on this ground. See Atkins v. Lee, 603 So.2d 937, 945 (Ala. 1992) ("A party may not predicate an argument for reversal on `invited error,' that is, `error into which he [or she] has led or lulled the trial court.' Dixie Highway Express, Inc. v. Southern Ry., 286 Ala. 646, 651, 244 So.2d 591, 595 (1971); see also State Farm Mutual Automobile Ins. Co. v. Humphres, 293 Ala. 413, 418, 304 So.2d 573, 577 (1974)."). Cf. Wilson v. State Dep't of Human Res., 527 So.2d 1322, 1325 (Ala.Civ.App.1988) (concluding that the parties' did not preserve their arguments for appellate review because they failed to raise a timely objection to the juvenile court's in camera examination of the parties' children).
Next, the mother argues that insufficient evidence supports the juvenile court's judgment terminating her parental rights.
The following is a recitation of the pertinent evidence. The mother and the father have two children together, J.H. and K.H., ages 7 and 9 at the time of the trial, respectively. The mother also has a daughter, B.H., age 12 at the time of the trial, born of a prior relationship. The mother and the father were married to *397 each other; however, they subsequently divorced in March 2000.
The trial court entered a divorce judgment awarding the father custody of J.H. and K.H. In its judgment, it made a finding of unfitness regarding the mother, a finding of dependency regarding B.H., and awarded custody of B.H. to the father. The trial court awarded the mother unsupervised visitation and ordered her to pay $454.91 in monthly child support.
After the divorce, the father remarried to H.H. ("the stepmother"). The father and the stepmother have one child together, and the stepmother has two children from a previous relationship, all of whom reside with them. The father is a cashier working at a garden center, and the stepmother is a homemaker.
The evidence established that the mother exercised her visitation rights until sometime in 2001. The mother testified of the first instance when the father began to interfere with her visitation rights. According to the mother, the children were in her physical custody while the father's son from another relationship had been hospitalized. After the father retrieved the children from the mother's physical custody, the stepmother became angry and told the mother that she could no longer exercise visitation with the children. She further testified that the stepmother and the father had threatened to call law enforcement if she attempted to exercise visitation with the children. The mother testified that she had made attempts to contact the father to exercise visitation but that her attempts were of no avail. K.Ho. ("the maternal grandmother") and two of the mother's sisters also testified that the mother's attempts to exercise visitation were thwarted by the father. The mother last visited with the children during the time of the maternal grandmother's visitation in the summer of 2001. When the father discovered that the mother had visited with the children, he no longer permitted the maternal grandmother to visit with them.
However, the father denied that the stepmother made decisions regarding the mother's visiting with the children. The stepmother also denied interfering with the mother's visitation rights or threatening to call law enforcement in the event the mother sought to exercise her rights.
Contrary to the mother's rendition of the facts, the father testified that in late 2000 the mother called him before her visitation period was scheduled to end, requesting that he obtain the children from her. According to the father, the children were sick and filthy when he arrived to retrieve the children. Additionally, he stated that the mother did not have electricity and running water in her home. The father then told the mother that she could not exercise visitation until she obtained adequate housing.
The father testified that the next time the mother requested visitation was when she inadvertently encountered the father at a convenience store. In response to the mother's request, the father told the mother that he was unaware of her current condition; the mother did not expound on her situation. The father testified that although he and the stepmother moved twice, the mother failed to contact him despite her having his telephone number. According to the father, the next time he received correspondence from the mother was when he was served with notice of her petition seeking to hold him in contempt for his alleged interference with her visitation rights in March 2005. The father testified that he responded by seeking to have the mother's visitation with the children supervised but that he then petitioned to terminate the mother's parental rights based upon the children's desire not *398 to visit with the mother. The stepmother petitioned to adopt the children, and the father petitioned to adopt B.H.
The mother admitted that the children desired not to visit with her. She also admitted that she has not purchased any food or clothing for the children and that she has not had any contact with the children since June 2001. The mother stated that she has not given the children gifts or cards since Christmas 2000 because she believed that her attempts to give the children gifts would be of no avail since she was told that she could not have any contact with the children. However, she testified that she had purchased the children toys, which she placed in the room that she had furnished for them.
The mother also admitted that she had failed to tender her monthly child-support obligation to the father although she was, at times, able to pay child support. The mother estimated an arrearage totaling approximately $37,000. The mother testified that she had failed to pay child support because she had been unemployed for a period of time. The mother testified that she had retained counsel to petition for a modification of child support but that that attorney had failed to file that petition on her behalf. She further testified that her counsel at trial had advised her to save money for the children. She stated that she had saved between $2,400 and $2,500 and that she was saving $200 per month for the children. At the time of trial, the mother had been employed with the same employer since February 2005, earning $10.00 an hour.
The mother has enrolled in college and has remarried. The mother has been living in a trailer for nearly two years, in which she and her husband reside. Although her current husband has been arrested for possession of a controlled substance, he participated in drug court and has been "clean" since the time of his participation in the drug-court program.
The mother has convictions for manufacturing and possession of a controlled substance. The mother testified that she was last arrested in February 2004 for a drug-related offense and has not had any "trouble" with law enforcement since that time. Although she did not serve a prison sentence, she was on parole at the time of trial.
The mother testified that, after her conviction, she began participating in a court-referred drug program, beginning in March 2004; that program requires her to submit to random drug tests. The mother also has voluntarily sought treatment for her drug addiction. John McAunlty, a therapist at the mother's outpatient-treatment center, testified that he has known the mother since March 2004 and that she has been "clean" since that time. McAunlty also testified that the mother has improved substantially. He further testified that the mother sought treatment for her drug addiction in order to be reunited with the children. Ray Pickard, a substance-abuse counselor at the outpatient-treatment center, testified that the mother counsels other patients and disseminates religious materials to patients at the treatment center. The mother testified that she has been "drug-free" since February 2004.
At the time of trial, the father was on probation for drug-related offenses and last violated the terms of his probation in 2005 by possessing a firearm. The father admitted that he and the mother had used drugs together. Also, the father testified that he and the mother had used drugs during the times the mother was exercising visitation with the children.
"`In ore tenus proceedings, the trial court is the sole judge of the facts and *399 of the credibility of the witnesses, and it should accept only that testimony which it considers worthy of belief.' Clemons v. Clemons, 627 So.2d 431, 434 (Ala.Civ.App. 1993)." Ex parte R.E.C., 899 So.2d 272, 279 (Ala.2004). Also,
"`[t]he ore tenus rule provides that a trial court's findings of fact based on oral testimony "have the effect of a jury's verdict," and that "[a] judgment, grounded on such findings, is accorded, on appeal, a presumption of correctness which will not be disturbed unless plainly erroneous or manifestly unjust." Noland Co. v. Southern Dev. Co., 445 So.2d 266, 268 (Ala.1984).'"
Ex parte R.E.C., 899 So.2d at 279. We are ever mindful that "[t]he paramount consideration in a case involving the termination of parental rights is the best interests of the children." Q.F. v. Madison County Dep't of Human Res., 891 So.2d 330, 335 (Ala.Civ.App.2004).
In Ex parte Beasley, 564 So.2d 950, 951 (Ala.1990), our supreme court stated: "when one parent seeks to terminate the other parent's parental rights, a `finding of dependency,' as a matter of law, is not required. . . ." However, if a nonparent petitions to terminate a parent's parental rights, that "court must make a `finding of dependency.'" Id. at 952. Furthermore,
"[t]he two-prong test that a court must apply in a parental rights termination case brought by a custodial parent consists of the following: First, the court must find that there are grounds for the termination of parental rights, including, but not limited to, those specifically set forth in § 26-18-7[, Ala. Code 1975]. Second, after the court has found that there exist grounds to order the termination of parental rights, the court must inquire as to whether all viable alternatives to a termination of parental rights have been considered."
Id. at 954.
Additionally, § 26-18-7 provides:
"(a) If the court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents. In determining whether or not the parents are unable or unwilling to discharge their responsibilities to and for the child, the court shall consider, and in cases of voluntary relinquishment of parental rights may consider, but not be limited to, the following:
"(1) That the parents have abandoned the child, provided that in such cases, proof shall not be required of reasonable efforts to prevent removal or reunite the child with the parents.
"(2) Emotional illness, mental illness or mental deficiency of the parent, or excessive use of alcohol or controlled substances, of such duration or nature as to render the parent unable to care for needs of the child.
"(3) That the parent has tortured, abused, cruelly beaten, or otherwise maltreated the child, or attempted to torture, abuse, cruelly beat, or otherwise maltreat the child, or the child is in clear and present danger of being thus tortured, abused, cruelly beaten, or otherwise maltreated as evidenced by such treatment of a sibling.
"(4) Conviction of and imprisonment for a felony.

*400 "(5) Unexplained serious physical injury to the child under such circumstances as would indicate that such injuries resulted from the intentional conduct or willful neglect of the parent.
"(6) That reasonable efforts by the Department of Human Resources or licensed public or private child care agencies leading toward the rehabilitation of the parents have failed.
"(7) That the parent has been convicted by a court of competent jurisdiction of any of the following:
"a. Murder or voluntary manslaughter of another child of that parent.
"b. Aiding, abetting, attempting, conspiring, or soliciting to commit murder or voluntary manslaughter of another child of that parent.
"c. A felony assault or abuse which results in serious bodily injury to the surviving child or another child of that parent. The term `serious bodily injury' means bodily injury which involves substantial risk of death, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty.
"(8) That parental rights to a sibling of the child have been involuntarily terminated.
"(b) Where a child is not in the physical custody of its parent or parents appointed by the court, the court, in addition to the foregoing, shall also consider, but is not limited to the following:
"(1) Failure by the parents to provide for the material needs of the child or to pay a reasonable portion of its support, where the parent is able to do so.

"(2) Failure by the parents to maintain regular visits with the child in accordance with a plan devised by the department, or any public or licensed private child care agency, and agreed to by the parent.
"(3) Failure by the parents to maintain consistent contact or communication with the child.

"(4) Lack of effort by the parent to adjust his or her circumstances to meet the needs of the child in accordance with agreements reached, including agreements reached with local departments of human resources or licensed child-placing agencies, in an administrative review or a judicial review.
"(c) In any case where the parents have abandoned a child and such abandonment continues for a period of four months next preceding the filing of the petition, such facts shall constitute a rebuttable presumption that the parents are unable or unwilling to act as parents. Nothing in this subsection is intended to prevent the filing of a petition in an abandonment case prior to the end of the four-month period."
(Emphasis added.) Pursuant to § 26-18-3(1), Ala.Code 1975, "abandonment" is defined as
"[a] voluntary and intentional relinquishment of the custody of a child by a parent, or a withholding from the child, without good cause or excuse, by the parent, of his presence, care, love, protection, maintenance or the opportunity for the display of filial affection, or the failure to claim the rights of a parent, or failure to perform the duties of a parent."
The mother argues that the juvenile court erred by failing to make a specific finding of dependency regarding B.H., which is required because the father, who *401 is not a parent of B.H., petitioned to terminate her parental rights.[1]
Although our supreme court in Ex parte Beasley stated that a court must make a "finding of dependency" when a nonparent seeks to terminate a parent's parental rights, Beasley does not require courts to make such a finding explicit. Rather, this court has concluded that a finding of dependency can be implicit. See L.L.M. v. S.F., 919 So.2d 307, 310-11 (Ala.Civ.App. 2005). Furthermore, the evidence supports an implicit finding of dependency based upon the juvenile court's determination that the mother had abandoned the children.[2]See § 12-15-1(10)1., Ala.Code 1975 (defining a "dependent child" as "[a] child. . . . [w]ho has been abandoned by the child's parents, guardian, or other custodian").
Next, the mother argues that the juvenile court erred in terminating her parental rights by failing to consider evidence of her current conditions regarding her willingness or ability to perform her parental duties and by failing to consider viable alternatives to termination.
In Ex parte T.V., 971 So.2d 1, 10 (Ala. 2007), our supreme court reversed this court's no-opinion affirmance of a judgment terminating the parental rights of a mother who had previously been a chronic drug addict, homeless, and unemployed; who had only provided nominal financial support on the child's behalf; and who had failed to visit the child for over four years. The mother in T.V. had subsequently recovered from her addiction, married, and obtained stable housing and steady employment for approximately two years preceding the filing of the termination-of-parental-rights petition. Id. at 3. Our supreme court held that despite the mother's "periodic" abandonment of the child, the juvenile court had failed to consider evidence of the mother's current conditions and, in turn, had failed to consider visitation with the child as a viable alternative to termination. Id. at 10.
However, T.V. is distinguishable from the case now before us. In T.V., the juvenile court had before it evidence indicating that the child, who was four years old at the time the petition was filed, was unaware that the mother was the child's biological mother. Ex parte T.V., 971 So.2d at 16. In T.V., the mother and the child had begun to establish a bond, without the child's knowledge that the mother was the child's biological mother. Id. Furthermore, the juvenile court had before it the recommendation of the child's guardian ad litem, stating that termination of the mother's parental rights was not in the best interest of the child. Id. Accordingly, our supreme court found substantial that "visitation  which upon all accounts does not harm [the child] and which the guardian ad litem concluded is good for [the child]  would appear to be a viable alternative to the termination of [the mother's] parental rights." Id. at 10 (emphasis added).
In the case now before us, the only evidence contained in the record on appeal regarding the mother's relationship with the children is the father's and the mother's testimony that the children, who were ages 7, 9, and 12 at the time of trial, did not wish to visit with the mother. Additionally, the juvenile court received the in camera testimony of the children; that *402 testimony was not included in the record on appeal. Unlike the child in T.V., two of the children in the present case, namely B.H. and K.H. are of an age where they are aware that the mother is their biological mother and know that she has not had any contact with them for an extensive period of time. Based upon that fact and the untranscribed in camera examination of the children, the juvenile court could have concluded that the mother's prolonged absence had a detrimental effect on the children and, therefore, that termination of the mother's parental rights would serve the children's best interests. Based on this conclusion, it also could have concluded that visitation with the children was not a viable alternative. As this court and our supreme court have repeatedly stated, the paramount concern in termination proceedings is the best interest of the child. See Ex parte J.R., 896 So.2d 416, 423 (Ala.2004); A.A. v. Cleburne County Dep't of Human Res., 912 So.2d 261, 264 (Ala.Civ.App.2005); Q.F., 891 So.2d at 335; and V.O. v. State Dep't of Human Res., 876 So.2d 1151, 1153 (Ala.Civ.App.2003).
As Judge Murdock stated in his dissent in K.W.J. v. J.W.B., 933 So.2d 1075, 1081 (Ala.Civ.App.2005), rev'd, 933 So.2d 1081 (Ala.2005):
"[C]hildren grow. They are read to and tucked in at night. They are nursed to health. They are taught. They are nurtured. They are loved. And they love back. And bonds are formed  but not with a [mother] who has allowed [herself] to remain absent from the [children's lives]."
Based upon the foregoing, we cannot conclude that the juvenile court erred by failing to consider evidence of the mother's current conditions in terminating her parental rights and by failing to consider viable alternatives to termination.
AFFIRMED.
THOMPSON, P.J., concurs.
BRYAN, J., concurs specially, with writing, which THOMAS, J., joins.
PITTMAN, J., concurs in the result, without writing.
MOORE, J., concurs in part and dissents in part, with writing.
BRYAN, Judge, concurring specially.
I concur in the main opinion. I write to express additional reasons why the juvenile court's judgment should be affirmed.
This court, as well as our supreme court, has repeatedly stated that the paramount concern in termination proceedings is the best interest of the child. See Ex parte J.R., 896 So.2d 416, 423 (Ala.2004); A.A. v. Cleburne County Dep't of Human Res., 912 So.2d 261, 264 (Ala.Civ.App.2005); and V.O. v. State Dep't of Human Res., 876 So.2d 1151, 1153 (Ala.Civ.App.2003). Furthermore, our legislature has unequivocally stated:
"It is the purpose of this chapter [the 1984 Child Protection Act] to provide meaningful guidelines to be used by the juvenile court in cases involving the termination of parental rights in such a manner as to protect the welfare of children by providing stability and continuity in their lives, and at the same time to protect the rights of their parents."

§ 26-18-2, Ala.Code 1975 (emphasis added). Our courts must protect the constitutional rights of parents while protecting the welfare of children. Additionally, this court has stated in D.W.W. v. State Department of Human Resources, 607 So.2d 240, 241 (Ala.Civ.App.1992), that
"the maintenance of family integrity is a fundamental right and that every parent has a prima facie right to custody of his or her child. In re Moore, 470 So.2d *403 1269 (Ala.Civ.App.1985). Accordingly, this right can be overcome only by clear and convincing evidence that the child's best interests would be served by permanently removing the child from the parent's custody. East v. Meadows, 529 So.2d 1010 (Ala.Civ.App.1988). In a termination of parental rights proceeding, the best interests of the child are always the primary consideration. East."
See also L.M.P. v. State Dep't of Human Res., 597 So.2d 216, 217 (Ala.Civ.App. 1992); see also Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Thus, a party petitioning to terminate a parent's parental rights must overcome a high burden, i.e., the clear-and-convincing standard, to override that parent's constitutional liberty interest.
Our legislature has enumerated a list of grounds that could warrant the termination of a parent's parental rights; the first of those is abandonment. See § 26-18-7(a)(1), Ala.Code 1975. Thus, a court may terminate a parent's parental rights based on clear and convincing evidence that that parent has abandoned his or her child. See § 26-18-7(a) ("If the court finds from clear and convincing evidence . . . that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents.").
Our legislature, in § 26-18-7(c), Ala. Code 1975, has prescribed a time period that it deemed sufficient to warrant the termination of a parent's parental rights on the basis of abandonment. Particularly, that section states:
"(c) In any case where the parents have abandoned a child and such abandonment continues for a period of four months next preceding the filing of the petition, such facts shall constitute a rebuttable presumption that the parents are unable or unwilling to act as parents. Nothing in this subsection is intended to prevent the filing of a petition in an abandonment case prior to the end of the four-month period."
§ 26-18-7(c) (emphasis added). Thus, our legislature has deemed that a parent's abandonment or, as that term is defined, a parent's
"voluntary and intentional relinquishment of the custody of a child . . ., or [a parent's] withholding from the child, without good cause or excuse, . . . of his presence, care, love, protection, maintenance or the opportunity for the display of filial affection, or the failure to claim the rights of a parent, or failure to perform the duties of a parent,"
§ 26-18-3, Ala.Code 1975 (emphasis added), for a period of four months creates a presumption, albeit rebuttable, that that parent is unable to discharge his or her responsibilities as a parent. Accordingly, when a parent abandons a child for four months, grounds exist to terminate that parent's parental rights.[3]
*404 After a party presents evidence indicating that grounds exist to terminate a parent's parental rights as codified by our legislature, and that evidence is presented in accordance with the standard of review that passes constitutional muster, i.e., the clear-and-convincing-evidence standard, courts must seek to achieve a result that is in the best interest of the child. The child's best interest is the polestar in such proceedings, and consideration of the child's best interest is paramount. See Ex parte J.R., 896 So.2d at 423; A.A. v. Cleburne County Dep't of Human Res., 912 So.2d at 264.
In the case now before us, the juvenile court found that the mother had abandoned the children. The mother does not dispute that determination on appeal. Furthermore, the evidence is undisputed that the mother has had no contact with the children since June 2001. The father petitioned to terminate the mother's parental rights in November 2005. The time of the mother's absence from the children's lives is substantially longer than the amount of time the legislature has deemed to be sufficient to indicate a parent's unwillingness to carry out his or her parental responsibilities.
Our supreme court, as well as this court, has stated that termination of parental rights must be predicated upon evidence of "`current conditions or conduct relating to a parent's inability or unwillingness to care for his or her children.'" Ex parte T.V., 971 So.2d 1, 5 (Ala.2007) (quoting D.O. v. Calhoun County Dep't of Human Res., 859 So.2d 439, 444 (Ala.Civ.App.2003)). Although the mother is to be commended for her efforts in rehabilitating herself, nothing can negate the fact that substantial time, i.e., more than four years, has passed while the children remained without their biological mother.
I note the comments of Justice Stuart in her dissent in T.V. She states:
"The `best interest of the child' is always of paramount importance in cases involving child custody and the termination of parental rights. In making such a determination, the court or the agency determining the best interest of the child must give great weight to the stability, security, and permanency of the relationship between the child and the child's caregiver. . . .
". . . .
"The juvenile court recognized that stability, security, and permanency are in the best interests of all children . . .; this Court should likewise recognize the importance of stability, security, and permanency in determining what is in the best interest of children. . . . "
Ex parte T.V., 971 So.2d at 11-12 (Stuart, J., dissenting) (emphasis added).
In my opinion, the mother abandoned the children when she failed to provide the children with "stability, security, and permanency." Her recent change did nothing to promote the "stability, security, and permanency" of the children for a period of over four years when she was either unable or elected not to care for them, or visit with them. There comes a point in time when change by a troubled parent is too little, too late. The case now before us is a perfect example of such an instance.
THOMAS, J., concurs.
MOORE, Judge, concurring in part and dissenting in part.
I concur in that portion of the main opinion holding that the juvenile court did not err in conducting an in camera examination of the children without recording it.
*405 I also agree with Judge Bryan's special concurrence that the mother has not properly raised as an issue for our review that the evidence is insufficient to sustain the juvenile court's finding of abandonment. That said, however, I believe the record does not contain clear and convincing evidence that the mother abandoned her children. In several prior opinions in which a divorced parent sought to terminate the parental rights of the other parent, this court has held that the defendant-parent had not committed abandonment when the plaintiff-parent prevented, inhibited, or frustrated the defendant-parent's visitation attempts. See Muncher v. Muncher, 509 So.2d 250 (Ala.Civ.App.1987); Talley v. Oliver, 628 So.2d 690 (Ala.Civ.App.1993); and S.M.W. v. J.M.C., 679 So.2d 256 (Ala. Civ.App.1996).
The record in this case demonstrates that, beginning in late 2000, the father, by his own admission, unilaterally terminated the mother's visitation privileges, halted the children's visitation with the maternal grandmother when he learned that the mother had also visited the children while they were in the maternal grandmother's care, and rejected the mother's request to restart visitation, eventually forcing her to file a motion in the divorce court to hold the father in contempt for interfering with her visitation privileges. These facts prove that the mother did not abandon her children, but was involuntarily restrained from visiting with them. At the very least, this evidence sufficiently contradicts any countervailing evidence tending to prove that the mother had abandoned the children, thereby making the evidence supporting a finding of abandonment less than clear and convincing. Nevertheless, an appellate court may not hold a trial court in error on grounds not argued on appeal. Thompson v. Skipper Real Estate Co., 729 So.2d 287, 289 n. 2 (Ala.1999); and Merchants Bank v. Cotton, 289 Ala. 606, 269 So.2d 875 (1972). As a result, we may not reverse the juvenile court for erroneously concluding that the mother had abandoned the children.
I am convinced, however, that the juvenile court committed reversible error by failing to properly consider the mother's current conditions before terminating her parental rights and by failing to properly consider less drastic alternatives to termination of the mother's parental rights.
The termination-of-parental-rights statute presents only two grounds for terminating parental rights. That statute permits a juvenile court to terminate a parent's parental rights
"[i]f the court finds from clear and convincing evidence, competent, material, and relevant in nature, that [(1)] the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or [(2)] that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such condition is unlikely to change in the foreseeable future."
Ala.Code 1975, § 26-18-7(a). In this case, the juvenile court terminated the mother's parental rights based on the first prong of the statute. The juvenile court concluded that the mother had abandoned the children. Under § 26-18-7(c), Ala.Code 1975,[4] the mother's abandonment raises a *406 rebuttable presumption that the mother was unable or unwilling to act as a parent. However, such abandonment does not conclusively establish that a parent is unable or unwilling to act as a parent.
"This court has consistently held that the existence of evidence of current conditions or conduct relating to a parent's inability or unwillingness to care for his or her children is implicit in the requirement that termination of parental rights be based on clear and convincing evidence."
D.O. v. Calhoun County Dep't of Human Res., 859 So.2d 439, 444 (Ala.Civ.App.2003) (citing T.H. v. State Dep't of Human Res., 740 So.2d 1089 (Ala.Civ.App.1998); Bowman v. State Dep't of Human Res., 534 So.2d 304 (Ala.Civ.App.1988); and Hamilton v. State, 410 So.2d 64 (Ala.Civ.App. 1982)). It follows that if evidence of the parent's current conditions shows that the parent is, in fact, able and willing to discharge his or her responsibilities to the child, the presumption of unfitness raised by the parent's abandonment of the child would be rebutted and the trial court could not rely on the first ground listed in the statute for terminating the parent's parental rights.
The mother presented evidence indicating that at the time of the hearing on the petition seeking termination of her parental rights, she was able and willing to discharge her responsibilities to her children. The evidence was undisputed that the mother had maintained employment for over a year, earning $10.00 per hour; that she had remarried and had been residing in a trailer with her husband for over two years; that she had enrolled in college; that she was on parole; that she was drug-free; that she was an active participant and counselor in a court-referred drug program; and that she was saving $200 per month for her children and bought them toys that she had placed in a room in the trailer she had furnished for the children.
It is true that the termination-of-parental-rights statute requires the juvenile court to consider the failure of a parent to provide for the material needs of the child or to pay a reasonable portion of its support, but only if the parent is able to do so. See Ala.Code 1975, § 26-18-7(b)(1). The mother testified that she was unable to pay child support for long periods because of her unemployment. "[P]overty alone is not enough to warrant the termination of parental rights." C.B. v. State Dep't of Human Res., 782 So.2d 781 (Ala.Civ.App. 1998). Moreover, a termination-of-parental-rights action is not the appropriate proceeding to enforce a child-support order. See Ex parte Brooks, 513 So.2d 614 (Ala. 1987).
The juvenile court was also required to consider the mother's failure to maintain consistent contact or communication with the children. Ala.Code 1975, § 26-18-7(b)(3). However, in light of the father's admission that he had prevented the mother from visiting the children, the juvenile court could not have reasonably drawn any inference that the mother was presently unable or unwilling to discharge her responsibilities to her children based on her failure to maintain consistent contact and communication with the children in the past.
In Ex parte Brooks, supra, our supreme court declared that the 1984 Child Protection Act is designed to afford a legal means of terminating parental rights when continuation of those rights threatens the welfare of the child. Since this declaration, this court has consistently held that termination of parental rights is not appropriate in cases like this one in which the *407 children are safely residing with the custodial parent and the continuation of the noncustodial parent's parental rights does not present any harm to the children. See In re Beasley, 564 So.2d 959 (Ala.Civ.App. 1990); Miller v. Knight, 562 So.2d 274 (Ala.Civ.App.1990); Talley, supra; and S.M.W., supra. Rather, in cases involving petitions filed by a divorced custodial parent, this court has affirmed the termination of a noncustodial parent's parental rights only in rare cases in which the custodial parent proved that the child would be harmed, either physically or emotionally, if the noncustodial parent's parental rights were not terminated. See Thornton v. Thornton, 519 So.2d 960 (Ala. Civ.App.1987) (threat that mentally ill mother would act violently toward child, like she did when she shot and killed child's four-year-old brother, warranted termination of parental rights); Sutton v. Elrod, 724 So.2d 551 (Ala.Civ.App.1998) (evidence that renewal of relationship with father who had been absent from eight-year-old child's life for seven years would be detrimental to child justified termination of parental rights). This distinction flows from the principle that termination of parental rights is reserved for the most egregious circumstances, Ex parte Beasley, supra, like those represented in this latter group of cases. When the court has been confronted by cases falling into the former category, it has recognized that a less drastic alternative, usually maintaining the status quo, is viable and should be utilized. See, e.g., Miller v. Knight, supra.
In her brief to this court, the mother basically urges the court to adhere to its previous treatment of similar cases. She asserts that the juvenile court should not have terminated her parental rights when it could have simply allowed the father to maintain custody while she exercised her visitation privileges. The mother persuasively argues that the juvenile court should have followed the supreme court's recent decision in Ex parte T.V., 971 So.2d 1 (Ala.2007). In T.V., our supreme court held that a mother's parental rights should not have been terminated based on evidence that she had successfully rehabilitated from a drug addiction and was slowly building a relationship with her child. Rather, maintenance of the status quo  leaving custody with a foster parent with visitation by the mother  while the mother forged a stronger relationship with the child constituted a less drastic viable alternative to termination of the mother's parental rights.
I agree with the mother that this case is remarkably similar to T.V. As in T.V., and as found by the juvenile court, the mother in this case has turned her life around since she lost contact with her children. Like the mother in T.V., after abandoning her children, the mother in this case has quit using drugs, has remarried, has established stable housing and employment, has attempted to restart visitation with her children, and has started counseling others to help them with their drug problems. The court in T.V. considered visitation a viable alternative to termination of the mother's parental rights in order that the mother could foster her relationship with her child. That same principle applies with even more emphasis in this case because the children have never seen their mother drug-free and have never had an opportunity to bond with her in a rehabilitated condition. Although the juvenile court did not have before it any recommendation from an expert or guardian ad litem that visitation would be in the children's best interests, as was the case in T.V., and although the children themselves indicated that they did not wish to visit with their mother, the record contains no evidence demonstrating that visitation would harm the children. I do not agree with the main opinion that the factual differences between the present case and T.V. warrant a different outcome. Rather, *408 I believe the holding in T.V. applies equally to this case and that the juvenile court's judgment terminating the mother's parental rights should be reversed for the same reasons as those advanced in T.V.
Finally, I agree with Judge Bryan's special concurrence noting that the goal in every termination-of-parental-rights case should be to protect the welfare of children by providing stability and continuity in their lives while at the same time protecting the constitutional rights of their parents. I simply believe that in this case that delicate balance does not require sounding the death knell on the mother's parental rights. See K.H.M. v. D.L.I., 895 So.2d 950, 953 (Ala.Civ.App.2003) (quoting juvenile court's order). This case does not involve a situation in which maintaining the mother's parental rights would involve ripping the children from the only family they have ever known. See, e.g., Ex parte W.T.M., 851 So.2d 55, 64 (Ala.Civ.App. 2002) (Murdock, J., dissenting). I believe the juvenile court could have fashioned a visitation order that would have protected both the stability and the continuity of the children's lives and the constitutional rights of the mother. Therefore, I respectfully dissent.
NOTES
[1] Although the Circuit Court of DeKalb County, in its divorce judgment, found B.H. dependent, we need not determine whether the circuit court had jurisdiction to find B.H. dependent.
[2] The mother does not argue on appeal that the juvenile court erred by finding that she had abandoned the children.
[3] Alabama has adopted the Adoption and Safe Families Act ("the ASFA"), codified at 42 U.S.C. § 671 and § 675. Under the ASFA as codified in various provisions in Chapter 18 of Title 26 of our Code, the Department of Human Resources, given certain conditions, must petition to terminate a parent's parental rights when a child has been in foster care for 15 of the most recent 22 months. § 26-18-6(b), Ala.Code 1975. The purpose of imposing a time restriction was to shorten the amount of time children would remain in foster care. See Katherine A. Hort, Is Twenty-Two Months Beyond the Best Interest of the Child? ASFA's Guidelines for the Termination of Parental Rights, 28 Fordham Urb. L.J. 1879 (2001).
[4] Section 26-18-7(c) provides:

"In any case where the parents have abandoned a child and such abandonment continues for a period of four months next preceding the filing of the petition, such facts shall constitute a rebuttable presumption that the parents are unable or unwilling to act as parents. Nothing in this subsection is intended to prevent the filing of a petition in an abandonment case prior to the end of the four-month period."